State of Vermont *v.* Davidson.

THE STATE OF VERMONT *v.* RILEY A. DAVIDSON.

*Criminal Law.    Evidence.    Corpus Delicti.*

It is well settled that the declarations of a person, injured when no one else who can be a witness is present, are not evidence to show the manner in which the injury occurred, however nearly contemporaneous they may be with the injury itself. REDFIELD, CH. J.

The only evidence against the respondent, who was indicted for highway robbery, was entirely circumstantial, both to prove the *corpus delicti* and the guilt of the respondent. The prosecution was permitted by the court to introduce in evidence on the trial, an inquiry made of the witnesses by the person supposed to have been robbed, directly after the crime (if any was in fact perpetrated) must have been committed, to the effect whether the witnesses had seen the respondent, in whose company the person supposed to have been robbed had been a short time previous. *Held,* that this inquiry was entirely incompetent to prove the *corpus delicti,* and should not have been suffered to go to the jury without instructions to that effect.

The government proved, among other circumstantial evidence, certain circumstances, which had no tendency to prove the *corpus delicti,* but had some tendency to show the guilt of the respondent, provided the crime charged had been committed; and the respondent requested the court to charge the jury that the *corpus delicti* could not be proved by such circumstances. But the court refused so to charge, and charged the jury that the circumstances which tended to prove the *corpus delicti,* and those which tended to establish the guilt of the respondent were so connected that they could not be separated, and that the jury might consider all the circumstances proved in the case, together, upon both questions. *Held,* that both the refusal of the court to charge as requested, and the charge, as given, were erroneous, and therefore a new trial was granted.

State of Vermont *v.* Davidson.

When the *corpus delicti* is attempted to be shown solely by circumstantial evidence, it must be so established as positively to exclude all uncertainty in regard to it from the minds of the jury. It is not, however, necessary that each particular circumstance be of this conclusive character, but the combined effect of all the circumstances in the case must be such as to produce the same degree of certainty in regard to the *corpus delicti*, as positive proof.

INDICTMENT in three counts for highway robbery, an assault with intent to rob, and an assault with intent to kill, respectively, upon the person of Michael Baldwin.

Plea, not guilty, and trial by jury, at the April Term, 1857,— UNDERWOOD, J., presiding.

The prosecution contended that the charge of highway robbery was substantiated against the respondent by the following circumstances, which were proved at the trial.

On the 1st of September, 1856, the respondent, who was then about starting from Fayetteville for his home in Jamaica, met Baldwin at the tavern in the former place. The respondent agreed to take Baldwin to Blanden's tavern in Townsend, and they started together, the respondent driving a white horse and riding in a red wagon. They stopped at Blanden's tavern, where Baldwin spoke of having lost five dollars, and during the conversation, Blanden counted the money in Baldwin's wallet and found it contained about forty dollars in bank bills. Shortly afterwards, at Blanden's tavern, Baldwin counted his money again and returned it to the wallet in the respondent's presence, putting a part of it in an outer unfastened compartment, and a part of it in an inner compartment of the wallet. Baldwin then appeared to have been drinking, and was more talkative than usual. While at Blanden's, the respondent and Baldwin alluded to the fact that Baldwin was, in a fortnight after that time, to commence working for the respondent, who remarked to Blanden that Baldwin ought to be a good man to work, because he had hired him for twenty dollars per month. The respondent also said that Baldwin said he could cut four cords of wood per day, and also stated that he, the respondent, had some land to clear. The respondent reminded Baldwin that he was to go on with him as far as the covered bridge (alluding to a bridge half a mile west), and Baldwin assenting, enquired how soon dinner would be ready, and, on being informed that it would be about

State of Vermont v. Davidson.

half an hour, remarked that he should have time, removed his bundle from the wagon and left it in Blanden's care, and then rode off with the respondent. It seemed as if it had been previously agreed between them that they should go together as far as the bridge. Baldwin was a larger and heavier man than the respondent. A few miles further on the two were next seen by Patty Wyman. Their horse had stopped near her house, and Baldwin and the respondent were embracing and apparently kissing each other. They shortly afterwards started on, the respondent driving the horse. Still farther on they were met between twelve and one o'clock, by A. M. Butler, who testified that he thought that Baldwin had been drinking; that his eyes were partly closed, and that there was a strong odor of liquor as the witness passed them. They were soon after this seen by Vespatian Benson, who testified that he drove so nearly behind them that he saw them sitting in the wagon, which was standing still, within a covered bridge, six miles west of the one above mentioned and ten miles east of Jamaica. They then appeared to be talking very socially together. They started on soon after Benson saw them, and passed up the road, but the witness had occasion to stop at a house a few rods from the bridge, and when he stopped they were so far up the hill before him, and the view was so obstructed by a barn, that they could not probably have seen his stopping if they had looked back.

At the top of the hill (which is about ninety rods from the house where Benson had stopped) the road passes for about half a mile on a higher level, having a steep wooded bank on the right, with the river at a distance varying from three to six rods, and on the left, having part of the way pasture, with scattering brush grown up in it, and for a part of the way woodland. There are no houses in this half mile, but it is a part of the main thoroughfare up West River, and much frequented, and the meadows on the opposite side of the stream are cultivated and open land, though not much of the way visible from the road, by reason of the trees on the steep bank. The place which the two men were entering at the top of the hill, was one of more or less seclusion from the vision of any residents, but not one of more seclusion than were some others through which they had passed.

At the other end of this half mile of road, the road attains the

same higher level by a similar hill rising towards the east, and a little easterly of its top is a watering trough. At this place David-son is next seen alone in his wagon. Ranny Howard, and Erasmus Howe, both of Jamaica, were leaving that village by this road, and stopped at this trough (having met no one on their way), when Davidson passed them in his wagon. Howard and he were acquain-tances. Howard bowed to him and thinks Davidson bowed to him in return. Howard saw some blood on Davidson's face and down on his cheek, " it looked as if a man's fingers were bloody and he drew them across his face." Davidson " struck his horse and went on a good jog." He was alone in his wagon. After passing thirty rods from the trough eastwardly, Howard and Howe saw a pocket book or wallet in the road. It was now unhasped and an outer apartment was partly open and empty. Its inner part though unhasped was not open, and contained seventeen dollars in bills, rolled up in a recommendation of Michael Baldwin, appa-rently written for him by an employer.

There was no evidence that any other person passed through the secluded piece of woods where Baldwin was found, between the time he and the defendant entered the woods in the wagon together, and the time the defendant was so met, being alone, near the trough, as before stated.

This wallet was Baldwin's, and the same one he had at Blanden's, and the seventeen dollars was a part of his money shown at Blan-den's. After going five or six rods further east, Howard and Howe saw a man coming towards them, at the distance of twenty-five or thirty rods. He staggered and fell on the upper side of the road, then got up and staggered along and pitched off the lower side down the steep bank. The witness was proceeding to say what the man said on their getting to him. The respondent's counsel objected, but the court permitted the government to prove that when the witness got to him, the stranger asked " if the witness had met a man with a white horse and red wagon." To the admis-sion of this testimony the respondent excepted. This person was Baldwin. He was bloody and muddy on his person, and the wit-ness thought drunk. He had a wound on the forehead nearly or partly on the nose, about an inch and a quarter long, apparently done by some rough substance, and not by an edge tool; a bruise

over the right eye, which made it difficult to open, and a similar cut or bruise on the right side of the head, of smaller size but nearly or quite through the scalp. The skin was discolored round the eye that was closed and his arms were bloody, and also wet with water. His clothes were bloody and dirty. He was still bleeding some. He became faint, and the witness described him as wholly or nearly fainting away. The witness was alarmed, but Baldwin revived and soon became rational. The witness went eastwardly for help, and after going about sixteen rods came to a place where a culvert or plank-covered sluice-way crosses the road, near the top of the hill, where it has already been mentioned that Davidson and Baldwin on going west entered upon this upper and more secluded road. At this place there was blood by the road side and the marks of a struggle in the moist earth. The road had been newly repaired, and the earth taken from the ditch had the impressions of feet which had slipped as if in shoving or struggling. Both the edge of the road and the ditch were marked in places with blood. The ditch had a sluggish current and there were stains of blood in it. The witness estimated that it must have required half a pint of blood to produce so much staining of the mud and water.

The witness afterwards examined the bank off of which Baldwin had staggered, and down which he fell, and found there no adequate means of inflicting the wounds by the fall, and found only one drop of blood.

No marks of blood were discovered between the place where the wallet was found and where Baldwin was first seen to fall. But between the latter place and the ditch, were marks of blood in the road. A witness testified that the next day after Baldwin was hurt, he found a stone on the bank of the ditch about ten inches long, as large as a good sized whetstone, which looked as though blood had dried on the edge of it.

Baldwin was carried to Jamaica and cared for. Davidson was apprehended at his own house. He readily consented to go to Jamaica, and got up to go and arrange his dress, and on starting moved slow as if it hurt him, but moved more easily afterwards. He walked up the hills in going to Jamaica, and in starting to do so, walked stiff and lame as if it hurt him, but soon recovered his

usual gait.   On arriving at the tavern in Jamaica, to which he was carried, he got out of the wagon with his usual step, and having occasion to go to the barn, walked there as smartly as ever.

At the examination before the justice, Baldwin produced another smaller wallet, in shape more round, which had in it a gold piece, and some silver change, but whether it contained bills or not the witnesses did not say.

It was not shown at this trial whether Baldwin had or had not when found, or at any time afterwards, any bills upon his person. Baldwin remained sick from his wounds and bruises over a week, and had not wholly got rid of the marks of discoloration about the eyes, when the court sat in September, 1856.   That court he attended and appeared before the grand jury.   He had instituted a suit returnable before that court at its session in April, 1857, against Davidson, for the assault, claiming one thousand dollars damages.   He did not enter that suit in court.   In October, 1856, he disappeared, and though recognized to appear, and though sought for by the state's attorney, has not been found.   He did not appear at this trial.

The respondent's counsel requested the court to charge the jury that in order to convict the respondent of the alleged crimes, they must first find that said several crimes respectively had been committed.   That the felonious taking of money by force from Baldwin against his will, could not be proved by circumstances or acts of the respondent which did not necessarily tend to that conclusion; such as previous knowledge of Davidson, that he had about his person forty-five dollars; or hiring Baldwin to work by an unusual contract; or going with him to a piece of road more or less secluded; or having with him a personal contest; or prevailing in that contest, and hurting Baldwin more than Baldwin hurt Davidson; or feigning lameness when apprehended; that these matters and the like might be relevant and proper to consider in deciding who took money, if it were taken from Baldwin, and against his will, but were not to be considered in deciding whether any money had been taken.

But the court refused so to charge the jury, but instructed them that although it was necessary to prove the *corpus delicti*, yet that the proof in this case which tended to prove that fact

State of Vermont *v.* Davidson.

was so connected with the criminal, if any there was, that the court did not see how they could separate the two and that they might consider the whole together; that it seemed to the court that if the jury found that the crime was committed, the evidence pointed to no other person than the defendant as the criminal. Yet that they must determine from the same evidence, first, whether a crime was proved, and if so, second, whether the defendant was the perpetrator, and of both they must be fully convinced in order to return a verdict of guilty, that the circumstances detailed were proper for them to consider in determining as to the *corpus delicti* as also, whether, if that was proved, the respondent was the perpetrator of the crime, and that they must consider carefully what essential points were to be made to constitute the several crimes charged, and see that each and all were fully proved.

The court charged the jury in other respects in a manner not objected to by the respondent.

The jury returned a general verdict of guilty.

To the refusal of the court to charge as requested, and to the portion of the charge as above set forth, the respondent excepted.

——————, for the respondent.

*B. L. Knowlton,* state's attorney, for the prosecution.

The opinion of the court was delivered by

REDFIELD, Ch. J.   I.   The first question is in regard to the admission of the statement of Baldwin, at the time he was first discovered by the witnesses.

It is well settled that the declarations of a party, injured when no one is present, are not evidence to show the manner in which the injury occurred, however nearly contemporaneous with the occurrence. Such declarations do not tend to characterize the transaction, and are, by consequence, no part of it, and cannot be admitted as such. This has been decided in this state with reference to injuries upon the highway when no one was present who could be a witness.

The declarations of the party are received to show the extent of latent injuries upon the person, upon the general ground that such

injuries are incapable of being shown in any other mode except by such declarations as to their effect, but they are not admitted as part of the *res gesta*.

Hence it clearly would not have been competent to show that Baldwin said, when first discovered, that he had been robbed, or that he had been robbed by the respondent, although undoubtedly such a statement would have some effect in convincing the jury that such was the fact. But it is merely hearsay, and depends for its force wholly upon the veracity of the speaker and the circumstances under which it was uttered. And it does not tend to ' characterize any act of the party speaking.

The testimony objected to in the present case was simply an inquiry in other words, if the witnesses had seen the respondent. And it is relied upon as equivalent to a declaration that Davidson had robbed him. It is indeed of less force than that, and is clearly inadmissible, upon the question of proving the *corpus delicti* towards proving which it seems to have gone to the jury.

Can this be received as part of the *res gesta*, which means, as part of the transaction? Of what transaction, it may be inquired? The transaction of the robbery, upon the theory of the government, was fully completed some time before this declaration was made. There was no transaction then in progress, of which this declaration could form a part, unless it was the pursuit of the respondent by Baldwin. And it is difficult to see how that had any tendency to show that a robbery had been committed, however it might bear upon the question whether the respondent was the party whose agency had produced the injury, whatever it was. There seems to have been no great question that the respondent was the only party who had been with Baldwin after he was last seen a few rods east of the point where he was then found. And if the injuries to Baldwin were not accidental, of which there seems no great probability, from the testimony detailed, it may be said there was not much question that the respondent had some agency in their production. But we do not perceive that the fact that Baldwin was pursuing the respondent tended to show that the case was one of robbery rather than of conflict. Baldwin would have been about as likely to pursue him in the one case as the other.

State of Vermont *v.* Davidson.

The mere fact of pursuit is not then competent evidence to prove the robbery, to which end it was suffered to go to the jury, notwithstanding the remonstrances of the respondent's counsel.

For so long as it is supposable that the injury may have happened by accident or possibly by other hands, the mere pursuit may have been to overtake the respondent as a friend to gain relief. The pursuit of the respondent by Baldwin, being then consistent with more than one theory of the production of the injury, the fact does not tend to prove the case charged in the indictment. The *corpus delicti* must be assumed to be proved before the pursuit becomes of any importance, and, the testimony having been objected to, and no instruction being given as to its effect, it possibly might have been viewed by the jury as possessing some intrinsic importance, from the mere fact that it was ruled in, notwithstanding objection, which otherwise it would not have had in their minds. And as it went into the case and was left to the jury as tending to prove the *corpus delicti*, is impossible to maintain its competency. And we do not decide that it had any legal tendency to identify the guilty party. But if it were confined to that point, and that were the only difficulty, I could, I think, make it a circumstance of some slight weight, and legitimately entitled to be considered if left to the jury upon that point only.

II. But the charge of the court seems to us to have been fatally defective.

The court, even when specially requested, expressly declined to instruct the jury in regard to any separation between the circumstances which tended to prove the *corpus delicti*, and those which went to identify the guilty party.

This was certainly important and usual in all criminal trials, where there is any doubt of the commission of the crime alleged. And some of the circumstances enumerated in the request, did not tend to prove the offence, *e. g.* Davidson's knowledge that Baldwin had money about his person, or the contract he made with Baldwin, or Davidson's appearance when he was arrested, or Baldwin's inquiry for Davidson, as we have before said. And the jury were not told, what the cases all require, that when the *corpus delicti* is attempted to be shown by circumstantial evidence, it must

be so establ'shed as to positively exclude all uncertainty or doubt from the minds of the jury. Not that each particular circumstance must be of this conclusive character, but all combined must produce the same degree of certainty as positive proof.

Verdict set aside and new trial granted.