## STATE v. BYRON U. ROBERTS.

*Homicide. Evidence. Implements of crime. Duty of State to produce evidence. Charge of court. Self-defense. Impeaching testimony.*

1. Where the evidence tended to show that the deceased was murdered by being struck with a stick and pole, it is proper to produce and identify these articles upon the trial.

2. The defense to a charge of murder being that the respondents made the assault in self-defense, it is not permissible to show that after the respondents had gone some sixty or seventy rods from where the injured man lay, they requested a third person to go to his relief.

3. Where five doctors examined the injured man, all of whom are within the reach of process at the time of trial, it is not revisable error if the court below refuses to compel the State's attorney to call them all as witnesses, after having improved a part. *State* v. *Magoon*, 50 Vt. 333 explained.

4. *Held*, that the court by its charge did sufficiently instruct the jury that one respondent might be convicted and the other acquitted.

5. *Held*, that the charge of the court fairly instructed the jury that the respondent was not obliged to retreat, before exercising his right of self-defense, unless there were means of escape which were apparent to him under the circumstances of the occasion.

6. The testimony of the respondents themselves being that the deceased walked some distance after being struck before he fell, it is not error for the court to tell the jury that "If the act was committed where the deceased fell it was not done in self-defense and it must have been done without legal justification or excuse."

7. The court was not bound to instruct the jury that "men do not commit crimes without some motive prompting them to it."

8. Nor was the court bound to distinguish between circumstantial and other evidence tending to establish the *corpus delicti*.

9. Where the respondents introduced evidence of contradictory statements made out of court to impeach a witness for the state, the jury were properly told "that the law regards this kind of impeaching testimony as uncertain and somewhat unreliable."

This was an indictment against the respondent, Byron U. Roberts, and one Henry Bent, for the murder of Louis Walder. The respondents pleaded not guilty and were tried jointly by jury at the December term, 1889, Bennington county, Tyler, J. presiding. Bent was acquitted. The respondent, Roberts, was convicted of manslaughter and sentenced to imprisonment for nineteen years. Exceptions by the respondent, Roberts.

The evidence tended to show that the respondents were drawing wood, and while so doing got into an altercation and quarrel with the deceased, in the course of which the deceased was struck with a stick of wood or stake and afterwards with the poles used for side poles upon the load of wood, and thereby received injuries from which he subsequently died. The only eye witness to the affray was August Walder, a son of the deceased about ten years of age, who was improved as a witness. The respondents claimed that their assault was committed in self-defense.

The questions raised and decided sufficiently appear in the opinion.

*W. B. Sheldon,* for the respondent.

The state should have produced all the physicians who had to do with this case and could throw light upon the subject, since the medical evidence was relied upon to make out the *corpus delicti.*

*State* v. *Magoon,* 50 Vt. 340.

The charge as to the duty of the respondent to retreat before defending himself was erroneous under the circumstances of this case. It was not enough that there was a way of retreat. That way must have been apparent to the respondent.

*Harrison* v. *Harrison,* 43 Vt. 417 ; *State* v. *Goodrich,* 19 Vt. 116 ; *State* v. *Wood,* 53 Vt. 560 ; 2 Whar. Cr. Law §1019 ; I Bish. Cr. Law §§ 841, 844, 849, 850, 851, 852, 853, 865, 867 ; *Com.* v. *Scott,* 7 L. T. 221 , *Kendall* v. *State,* 8 Tex. App. 569 ; *Tresser* v. *State,* 77 Ind, 274 ; *People* v. *Caughlin,* 32 N. W.

Rep. 905; *Duncan* v. *State,* 49 Ark. 543; *People* v. *Gonzales,* 71 Cal. 569; *State* v. *Donelly,* 69 Iowa 705; *State* v. *Partlow,* 90 Mo. 608; *Panton* v. *People,* 114 Ill. 505; *State* v. *Parker,* 9 S. W. Rep. 728; *Bang* v. *State,* 60 Miss. 571; *Steinmeyer* v. *People,* 95 Ill. 383; *Fortenberry* v. *State,* 55 Miss. 403; *Runyon* v. *State,* 57 Ind. 80; *Terrill* v. *Cam.* 13 Bush. (Ky.) 246; *State* v. *Matthews,* 78 N. C. 523; *State* v. *Dixon,* 75 N. C. 275; *Halloway,* v. *Com.,* 2 Bush. (Ky.) 344; *Kingen* v. *State,* 45 Ind. 518; *Com.* v. *Crawford,* 8 Phil. (Pa.) 490; *State* v. *Collins,* 32 Iowa 36; *State* v. *Sloan,* 47 Mo. 604.

The court should not have told the jury that the impeaching testimony was uncertain and somewhat unreliable.

*State* v. *Daley,* 53 Vt. 442.

*O. M. Barber,* State's Attorney, and *J. K. Batchelder,* for the state.

It was no error to exclude evidence that the respondents told Mallory to go to the assistance of the deceased. That was a mere declaration of theirs.

*Ellis* v. *Cleveland,* 55 Vt. 358; *State* v. *Flint,* 60 Vt. 315.

The fact that the State's Attorney did not produce all the physicians who had examined the deceased is no error of which the respondent can complain in this court. I Bish. Cr. Proc. §966 and cases there cited; *State* v. *Smallwood,* 75 N. C. 106; *State* v. *Martin,* 2 Ired. 101; *Bressler* v. *People,* 3 N. E. Rep. (Ill.) 521; Same *v.* Same, 8 N. E. Rep. (Ill.) 62; *Com.* v. *Haskell,* 2 N. E. Rep. (Mass.) 773; *Mergentheim* v. *State,* 8 N. E. Rep. (Ind.) 568; *Onofri* v. *Com.,* 11 At. Rep. (Penn.) 462.

The charge of the court as to the impeaching testimony was correct.

I Greenl. Ev. §200; *State* v. *Center,* et al., 35 Vt. 378.

The opinion of the court was delivered by

TAFT, J. 1. The first exception insisted upon, is the one. taken to the admission in evidence of the stake and pole in con-

nection with the testimony of Knapp and August Walder. August was present at the homicide; he testified that the deceased was struck with a stake and two poles, and that he pointed them out to the witness, Knapp; the latter identified those in court as two of those so pointed out to him. It is always proper to put in evidence the instruments which the testimony tends to show a crime was committed with, and in so doing on the trial below, there was no error.

2. The respondents offered to show that after the affray, and after they had gone away sixty or seventy rods, they requested one Mallory to go to the relief of the deceased, as tending to prove that they acted in self-defense. They were undoubtedly aware from the serious nature of their assault upon him, that he was dangerously, if not mortally wounded, and considering the hazardous situation they were in, whatever the character of their assault may have been, the fact that they evinced some anxiety upon his account, and a desire to relieve him by sending him aid, had no tendency to show they acted in self-defense instead of aggressively. Generally one would be full as likely to send relief in the latter case as in the former, and perhaps more so. The offered testimony was immaterial.

3. There were five surgeons present, either at an operation performed upon the deceased a few days before his death, or at the autopsy, who were within reach of process. The facts described upon both occasions were material. When the State rested its case but three of the surgeons had been improved as witnesses. The respondent then moved that the State call the two surgeons who had not been examined. This motion was denied and the respondent excepted. The two were subsequently called by the respondent and examined. He now insists that the denial of his motion was error and relies upon the case of *State* v. *Magoon,* 50 Vt. 333. Some courts deem that a prosecuting officer ought in murder and other like causes, to call as witnesses all who were present at the transaction, whatever be the nature

of their testimony; others think it properly within his discretion to call such, and such only, as he thinks best. In the case cited, the court said, "But in criminal prosecutions, the State is bound to produce and use all witnesses within reach of its process, of whatever character, whose testimony will throw light upon and characterize the transaction under inquiry, whether it tends to convict or acquit the respondent." The court did not hold that it would be reversible error if all such witnesses were not called. Conceding that it is the *duty* of a State's attorney to call all the witnesses present at a transaction, it by no means follows that it is a legal right of a respondent that he be compelled to, or, in case of conviction, the verdict vitiated if he do not call them. The conduct of a trial in certain respects must, to a great extent, be left within the discretion of a State's attorney; the testimony might be cumulative; the character of a witness might be so disreputable that it would be a farce to have him sworn; the State's attorney might err in judging of the witness; who is to judge whether the testimony of the alleged witness would throw light upon and characterize the transaction? What was said by the court in the case cited, refers to the duty of the State's attorney in the conduct of cases, in its general sense rather than to any right of the respondent in respect of the matter. It is the duty of the State's attorney, unless disqualified, to prosecute all criminals; he may be guilty of gross misconduct in the prosecution of one; he may be incompetent and the court compelled to appoint a special attorney to prosecute. It is absurd to claim that for a violation of his duty by the State's attorney in the conduct of a trial, the verdict should be set aside, unless some legal right of the respondent is denied. We hold that the action of the court was correct and did not deprive the respondent of any right to which he was entitled under the law.

4. The respondent presented requests to charge, several of which he insists were not complied with, viz: that the crime was several, and that one respondent might be acquitted and the

jury convict or disagree as to the other. This is undoubted law, needs the citation of no authorities, and was fully complied with by the court when it said, " You may find one respondent guilty of one of these degrees of crime, and the other of another degree. You may also find one respondent guilty of one of these crimes, and the other not guilty of any crime, as the evidence in the case warrants.

If you find one of the respondents innocent of all crime under the indictment and the other one guilty of manslaughter, murder in the second degree, or murder in the first degree, you will say in your verdict which one, by name, is innocent, and which one, by name, is guilty, and say of which crime he is guilty.

If you find one of the respondents guilty of the crime of manslaughter, murder in the second degree, or murder in the first degree, and the other respondent guilty of another of said crimes, you will say in your verdict of which of the crimes each respondent, by name, is guilty.

If you find that both respondents are guilty of the same crime you will say of what crime you find them guilty."

Had the court failed to instruct them as requested, that no harm was done the respondent by the omission, is apparent from the fact that one respondent was acquitted and one convicted.

5. The respondents claim that they acted in self-defense, and requests 6, 7 and 8 had relation to the law upon that subject, The error complained of is that under the charge the right of the respondent to defend himself was taken away, if he in fact had the means of escape whether they were apparent to him or not. To justify one assailed in taking life it must be apparent to him that he has no means of escape. If he has means of escape, but they are unknown to him, if he does not know that he can avail himself of them, he is justified in defending himself by force from the apparent danger he is in. This, we under-

stand, was the rule laid down by the court below. The judge said:

"When a person is unlawfully assaulted by another, the party assaulted has a right to defend himself and to use sufficient force to make his defense effectual. But the law never permits the unnecessary use of force; therefore, when a man is attacked he must not use force to defend himself, if he can otherwise protect himself. If he has other means or ways of avoiding the assault that appear to him at the time sufficient and available and that are in fact sufficient and available, he must resort to them and cannot justify the force for his defense, for in that case its use would be unnecessary." And what follows is in the same line, viz:

"Perhaps you cannot judge of the act altogether as it *now* seems to you. It should not be judged of wholly in the light of what, in looking back upon it, you can see, in cool thought, Roberts might have done differently, but assuming his claim to be true, in the situation he claims he was in, in the time he had to think and act, were there means to have escaped, or means that to him then seemed available for escape? If not, then he had a right to use means sufficient to protect himself from harm, and if he used no more force than was necessary, or at the time seemed to him necessary, then he is not responsible for the consequences."

"And if he saw no available means of escape or of disarming his assailant, and was obliged to resist Walder's assault with force, in order to protect himself," etc.

It is claimed that the following words in the latter part of the charge "Were there means to have escaped or means that to him then seemed available for escape?" are inconsistent with what goes before and conveyed a different meaning. It might have been plainer if the conjunctive *and* had been used in the place of *or*, but we think the sense and meaning of the expression taken in connection with the rest of the charge was the same as though it had been. It was not, if he had means of escape he could not defend himself, but if he had means of escape, *i. e.*, such means as the judge had been speaking of, means of escape that seemed to him available, then and in that event only, was he obliged to retreat.

10

6.   The court in its charge said :

"If the act was committed where the deceased fell it was not done in self-defense and it must have been done without legal justification or excuse, and consequently it must have been one of the crimes that I have defined." And this the respondent insists was error. The assault was committed by striking the deceased upon the head with a pole. The claim of the respondent was that the blow was struck, and then Walder went up the road alone, a distance of about thirty feet and then fell. The State claimed that before the fatal blow was struck, Walder went up the road pursued by the respondents, that he was struck by them, when they were in pursuit of him, and that he fell at the place where he was, when the respondents struck him. If the blow was struck where Walder fell, it was struck when he was fleeing from the respondents, who were in full pursuit of him. If the facts as claimed by the State were true, there was no legal justification or excuse for the blow, and it was the duty of the court to so tell the jury.

7.   No reason is assigned why it was error not to comply with the 13th request, and we know of none. The court were not bound to tell the jury that "men do not commit crimes without some motive prompting them to it." This is no legal rule; in this respect the request was faulty, and not being correct as a whole the court were not bound to notice it. *Rea* v. *Harrington*, 58 Vt. 181. The whole request is rather an argument as to the facts, than the statement of any legal rule.

8.   Exception was taken, for that the 14th request was not complied with. The rule as claimed in the request was :

"The jury must find the *corpus delicti*, so far as it is attempted to be proved by circumstantial evidence, so proved and established as to positively exclude all uncertainty or doubt from their minds, or the verdict should be not guilty."

It is not clear that this statement is law ; it is not unless " all uncertainty or doubt" is synonymous with "any reasonable doubt." So treating it, the court complied with it by telling the jury it was necessary they should be satisfied beyond any reasonable doubt that Walder died of the injuries received at the hands of the respondents or one of them, and this is the rule whatever the nature of the evidence may be, circumstantial, or direct and positive. It is also claimed that the court failed to do its duty in not separating the circumstances and pointing out to the jury

State *v.* Roberts.

those that tended to prove the *corpus delicti*, from those tending
to prove the connection of the respondents with the transaction,
relying upon *State* v. *Davidson*, 30 Vt. 377. In that case illegal
testimony was admitted and used to prove the *corpus delicti*, and
for that reason the verdict was set aside. The exceptions do not
show in this case that any evidence was improperly admitted or
improperly used by the jury, and no question having been made
in the admission of the evidence, the court was under no duty in
its charge to enter into a classification of it and distinguish and
explain the various purposes for which it had been admitted and
for which it might be used by the jury; presumably the jury un-
derstood the purposes for which it was admitted, at the time the
testimony was given and the arguments of counsel made.

9. August Walder was improved as a witness for the pros-
ecution; there was testimony in the case tending to show that
before the trial, he had made statements differing from his testi-
mony given on the trial. This testimony was introduced for the
purposes of impeachment, and the court referring to it said,

" The law regards this kind of impeaching testimony as un-
certain and somewhat unreliable for the reason that persons are
liable not to hear and understand and repeat correctly."

That the law does so regard it, see opinion of Aldis J., in
*State* v. *Center*, 35 Vt. 378, viz : " Declarations at the best are
uncertain evidence, liable to be misunderstood, imperfectly re-
membered, and incorrectly related."

This disposes of all the questions made by the counsel and
our *judgment is, that there is no error in the proceedings and
the respondent takes nothing by his exceptions.*

Munson, J., having been of counsel for the acquitted re-
spondent, did not sit.