(No. 11579.—Reversed and remanded.)

THE PEORIA CORDAGE COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL BOARD OF ILLINOIS *et al.*—(JULIA FAVRE, Exrx. Defendant in Error.)

*Opinion filed June 20, 1918.*

1. WORKMEN'S COMPENSATION—*witnesses cannot testify as to statements of injured employee as to cause of injury.* To sustain a recovery under the Workmen's Compensation act it is not necessary that some witness shall testify to seeing an accident arising out of and in the course of employment, but the testimony of witnesses as to what the injured employee told them as to the cause of the injury and as to where and how it occurred is incompetent and cannot sustain an award.

2. SAME—*what statements of injured employee to his physician are admissible.* Declarations made by one injured, to his attending physicians, are admissible in evidence when they relate to the part of the body injured and to his symptoms and sufferings and when they are free from suspicion of being spoken with reference to future litigation, but the statements are not competent if they relate to the cause of the injury.

3. SAME—*an award must be based on competent evidence.* The Supreme Court cannot inquire into the weight of conflicting evidence but is charged with the duty of determining whether there is any competent evidence sufficient to sustain an award, which must rest upon competent and legal evidence and not be based upon mere conjecture, suspicion or surmise.

4. SAME—*what finding is beyond the province of the coroner's jury.* A finding by a coroner's jury that the death of an employee resulted from an injury while in the discharge of his duty as an employee of a certain employer is beyond the province of the coroner's jury.

5. CORONERS—*coroner's duties and authority are statutory.* In Illinois the duties and authority of the coroner are specifically defined by statute, and the finding of the coroner's jury is merely advisory to the public authorities charged with the administration of the criminal law.

6. SAME—*verdict of coroner's jury is not admissible to fix civil liability.* Unless by an inquiry the circumstances indicate to the coroner that a deceased came to his death by violence or casualty he has no authority to hold an inquest of the body, and in any case where he is authorized to act his authority is limited to an inquiry

into the physical facts and to obtaining evidence for the apprehension of any person implicated in the commission of a crime, and the verdict of his jury is not admissible to fix a civil liability, except in so far as a legitimate finding of physical facts may have that effect.

7. SAME—*coroner has no judicial power.* At common law the office of coroner was judicial in its nature, but by section 1 of article 6 of the constitution the judicial powers are vested in the courts therein named and no judicial power can be exercised by any other authority.

FARMER, CARTER and CRAIG, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding.

MACCHESNEY, BECKER, ANGERSTEIN & ROLLO, and O'HERN & O'HERN, (NATHAN WILLIAM MACCHESNEY, THOMAS C. ANGERSTEIN, ROBERT P. ROLLO, and GEORGE W. ANGERSTEIN, of counsel,) for plaintiff in error.

WEIL & BARTLEY, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Julia Favre, widow and executrix of John Favre, deceased, made an application under the Workmen's Compensation act for compensation for her husband's death, alleged to have resulted from an accident arising out of and in the course of his employment by the plaintiff in error, the Peoria Cordage Company. The application was heard by an arbitrator, who made a finding for the applicant, and on appeal to the Industrial Board the finding was affirmed. The cause was heard in the circuit court of Peoria county on a writ of *certiorari* to the Industrial Board and the writ was quashed. The court certified that the cause was not one that should be heard by this court but a writ of error from this court was allowed, and the record has been brought here for review.

John Favre was employed by the plaintiff in error and died on February 17, 1916, from septicæmia, or general infection, following an injury to the index finger of his left hand, and it was alleged in the application that the injury occurred accidentally about February 2, 1916, and arose out of and in the course of his employment by plaintiff in error while at work in its plant. The only testimony that the injury occurred while at work for the plaintiff in error or in the course of such employment was the testimony of witnesses that he said he cut the finger on a can while at work in the plant. No one saw the accident and no one in or about the plant had any knowledge that it occurred. The superintendent in charge of the department in which Favre worked saw him at least once an hour and did not see and was not informed by him or anyone else at the plant that any accident had occurred. Favre was working on February 4, 1916, and on that day he showed the finger to his son and said that it was cut two days before on a can while at work. Favre's wife had been troubled with an infection and abscess on her arm and had been treated by a doctor, and the son applied on his father's hand some of the antiseptic solution that she had been using. The next day there was no improvement, and Favre's wife telephoned the company that he had hurt his finger while working at the cordage plant, which operated as notice to the plaintiff in error but was not evidence of anything. In pursuance of that notice the company's doctor gave some treatment to the finger, and testified that Favre told him the injury occurred ten days before that time. The next day, February 6, Favre went to the office of the doctor who had been treating his wife and told him he had cut his finger while at work in the plant of the cordage company a few days before. The finger was then badly infected and the doctor could not tell whether there had been any laceration, but on opening it he found considerable pus. Favre was treated thereafter by the doctors, and the finger becoming gangrenous, he was

taken to a hospital and the finger was amputated on February 15. There was a general infection of the system and he died two days afterward.

It is not necessary that some witness should testify to seeing an accident arising out of and in the course of employment if it is shown in some way that while the employee is at work there has been a recent accident or some circumstance tending to show the fact, but in this case there was none whatever. The testimony of witnesses as to whether the injury arose out of or in the course of employment was all purely hearsay and incompetent. The fact that statements were made by Favre to doctors who treated him did not render their testimony competent. Declarations made by one injured, to his attending physician, are admissible in evidence when they relate to the part of the body injured and his symptoms and sufferings, because a physician is necessarily guided to some extent by such information, free from suspicion of being spoken with reference to future litigation, but the statements are not competent if they relate to the cause of the injury. (*Illinois Central Railway Co.* v. *Sutton,* 42 Ill. 438; *Chicago and Alton Railroad Co.* v. *Industrial Board,* 274 id. 336; *Globe Accident Ins. Co.* v. *Gerisch,* 163 id. 625; *Reck* v. *Whittlesberger,* 5 N. C. C. A. (Mich.) 917; *Gilbey* v. *Great Western Railway Co.* (1910) 3 B. W. C. C. 135; *Amys* v. *Barton,* (1912) 1 K. B. 40; *People* v. *Davidson,* 30 Vt. 377.) The testimony of the witnesses concerning what Favre said to them as to the cause of the injury and where and how it occurred was incompetent and should not have been admitted and was insufficient to sustain the award. This court cannot inquire into the weight of conflicting evidence and determine where the preponderance lies. (*Parker-Washington Co.* v. *Industrial Board,* 274 Ill. 498; *Munn* v. *Industrial Board,* id. 70; *Illinois Midland Coal Co.* v. *Industrial Board,* 277 id. 333; *Forschner & Co.* v. *Industrial Board,* 278 id. 99; *Smith-Lohr Coal Co.* v. *Industrial Board,* 279 id. 88.) The court,

however, is charged with the duty of determining whether there is any competent evidence sufficient to sustain an award, which must rest upon competent and legal evidence and not be based upon mere conjecture, suspicion or surmise. (*Goelitz Co.* v. *Industrial Board,* 278 Ill. 164; *Savoy Hotel Co.* v. *Industrial Board,* 279 id. 329.) The testimony of witnesses formed no sufficient basis for the finding and award.

A coroner's verdict was offered and admitted in evidence over the objection of the plaintiff in error, the major part of which is as follows: "That the said John Favre * * * came to his death * * * from septicæmia, due to a cut of finger from fibre can, accidentally received while in the discharge of his duties for the Peoria Cordage Company." Unless that verdict was admissible in evidence as proof that the injury to the finger arose out of and in the course of employment of Favre by the plaintiff in error there was no competent evidence on which an award could be made.

The antiquity of the office of coroner and the general nature of the duties of the office at common law were stated in *United States Life Ins. Co.* v. *Vocke,* 129 Ill. 557. The office of coroner, as the name indicates, related to the crown as a representative of the government, and at common law his duties were both judicial and ministerial. His ministerial duty was to act as the substitute of the sheriff under proper conditions, and the judicial authority related to inquiries as to the manner of death of any person slain or who died in prison or otherwise came to a violent or sudden death. His principal official duty was to inquire into the manner in which persons came to their death where there was any reason to suppose that death might not have been due to natural means and to institute prosecutions for homicide, and his jury fulfilled the office of a grand jury and could find a verdict of murder, and on that finding the accused could be tried and sentenced to death. The verdict,

when it contained the subject matter of an accusation equivalent to an indictment of the accused, was a basis for a trial and conviction.   (*Small* v. *State,* 101 Ga. 570.)   The general nature of the office of coroner remains the same as at common law, but the finding of the jury is advisory, merely, to the public authorities charged with the administration of the criminal law, and the duties of the coroner and his authority are specifically defined by statute.   He is a conservator of the peace, and may act as sheriff in case the office of sheriff is vacant or the sheriff is disqualified to act.   With respect to his power to hold inquests and under what circumstances he is authorized to hold the same, his power is specifically defined by the statute to hold an inquest "whenever and as soon as he knows or is informed that the dead body of any person is found, or lying within his county, supposed to have come to his or her death by violence, casualty or any undue means."   The function and authority of the jury to render a verdict are fixed by the oath to "diligently inquire, and true presentment make, how, and in what manner, and by whom or what, the body which here lies dead, came to its death."   The coroner can only act within the limits of his statutory authority, the plain purpose of which is to seek information and obtain and secure evidence in case there is reasonable ground to believe that a death has been caused by violence or other undue means, and he is authorized to apprehend any person implicated by the inquest as the unlawful slayer of the deceased or as an accessory thereto.   He cannot go beyond his statutory authority, but within that authority he has discretion to hold an inquest if there is reasonable ground for a belief that the deceased may have come to his death by violence or unnatural means.   Unless by an inquiry the circumstances indicate to the coroner that the deceased came to his death by violence, casualty or any undue means he has no authority to hold an inquest of the body.   (*Albaugh-Dover Co.* v. *Industrial Board,* 278 Ill. 179.)   Favre did

not come to his death by violence, casualty or any undue means but died under the care of physicians, at a hospital and after an operation, from infection which the evidence showed might enter into any cut or injury such as he had sustained, and it does not appear that the coroner had any information or knew of any circumstances indicating that he came to his death from any of the causes mentioned in the statute. If the coroner had any information which in the exercise of his discretion authorized him to act, his authority was limited to an inquiry into the physical facts and obtaining and securing evidence for the apprehension and prosecution of any person implicated in the commission of a crime. In no case would the verdict be admissible for the purpose of fixing civil liability.

In *Pittsburg, Cincinnati and St. Louis Railway Co.* v. *McGrath,* 115 Ill. 172, which was an action for negligence causing the death of the plaintiff's intestate, the court, in sustaining the exclusion of the deposition of a witness at the inquest who had since died, after stating that such depositions were admissible in England, said: "The plaintiff was not a party to the proceeding before the coroner, was not present, had no opportunity for the cross-examination of the witness, and any question of negligence,—the vital question in this case,—was not the very matter of inquiry before the coroner. The legitimate object of the inquest would have been fulfilled in finding simply that the death of deceased was caused by his being run over by a railroad train, without inquiry whether it was through anyone's, or whose, negligence."

It would be absurd to say that the deposition of a deceased witness was not admissible to fix a civil liability, but that the verdict of the coroner's jury, based on the same deposition, would be admissible for the same identical purpose. At common law the office of the coroner was judicial in its nature, but by section 1 of article 6 of our constitution the judicial powers are vested in the courts therein

named, and the section exhausts the judicial power, leaving no residuum, and no judicial power can be exercised by any other authority. (*Missouri River Telegraph Co.* v. *First Nat. Bank of Sioux City,* 74 Ill. 217; *People* v. *Olson,* 245 id. 288.) The finding of the jury may be made *prima facie* evidence of facts within the legitimate scope of the inquiry but it determines no right and fixes no liability. It may be that a legitimate finding by a coroner's jury of a physical fact, when admitted as evidence, will have some effect upon the issues in the civil case as *prima facie* evidence of the existence of such fact. In *United States Life Ins. Co.* v. *Vocke, supra,* which was an action on a life insurance policy, it was held that the verdict of a coroner's jury finding that the insured came to his death by suicide was admissible in evidence although not conclusive. This was upon the distinct ground that the proceeding was analogous to proceedings *in rem,* being made in behalf of the public to ascertain matters of public interest and concern, and in that respect was an exception to the general rule in regard to hearsay evidence. The verdict in that case was legitimate evidence of how and in what manner and by whom or what the deceased came to his death. That decision was followed, concerning admissibility in evidence of a coroner's verdict that an insured came to his death by suicide, in the case of *Grand Lodge Independent Order of Mutual Aid* v. *Wieting,* 168 Ill. 408; also to show the fact of suicide by a testator, in *Pyle* v. *Pyle,* 158 Ill. 289; and again in *Devine* v. *Brunswick-Balke-Collender Co.* 270 Ill. 504, as to the cause of the death of a child killed by an automobile truck, where the verdict contained a finding that the driver of the truck was blameless,—an essential question before the coroner's jury for their investigation and to be included in their verdict. It was followed, also, in *Stollery* v. *Cicero and Proviso Street Railway Co.* 243 Ill. 290, as to a verdict that a boy came to his death by being caught and crushed by a conveyor, and in *Foster* v. *Shepherd,* 258 Ill.

164, as to the portion of a verdict finding that a wound was caused by a bullet fired from a gun held in the hands of Homer Shepherd, who in the opinion of the jury was justified in the act. In all of these cases the body came to its death by means within the terms of the statute and the finding was within the statutory authority of the coroner and the oath of the jury. In *Armour & Co.* v. *Industrial Board,* 273 Ill. 590, the verdict held admissible found that the deceased came to his death from traumatic pneumonia, resulting from an injury received when he fell from an Armour & Co. wagon. That verdict was competent *prima facie* evidence of the physical fact of the cause of death, and there were stipulated facts that the deceased was driving a wagon for Armour & Co. at the time, in the course of his employment. In this case there was not a word of competent evidence that Favre received any injury at the plant of the plaintiff in error or during the time that he was working there, and if the coroner could hold any inquest, his authority and the power of the jury ended with the finding that Favre died from septicæmia, due to a cut on his finger. The question whether the injury to his finger arose out of and in the course of his employment was purely a matter of private right between the applicant and the plaintiff in error and was beyond the jurisdiction of the coroner or his jury. No one is strictly a party to an inquest made on behalf of the public, and to permit a finding to fix the liability of an individual not a party to the proceedings except as one of the general public, who has no choice in the selection of the jury, no right to cross-examine witnesses or disprove testimony, is to condemn him unheard and to disregard fundamental principles applicable to all proceedings in courts of justice. It is not within the province of a coroner's jury to fix civil liability of anyone growing out of an accident resulting in a death, except in so far as a legitimate finding of physical facts within the power and jurisdiction of the coroner may have that effect. (*Novitsky*

v. *Knickerbocker Ice Co.* 276 Ill. 102; *Albaugh-Dover Co.*
v. *Industrial Board, supra.*) If the coroner, in the exercise
of his discretion, acted upon any information which justi-
fied holding an inquest, the finding that the death of Favre
resulted from an injury while in discharge of his duty as
an employee of the Peoria Cordage Company was entirely
without the province of the jury and was unauthorized by
the statute, the law or the nature of the coroner's office and
could have no effect to fix a civil liability. It was incom-
petent for that purpose and should not have been admitted
in evidence.

The judgment of the circuit court is reversed and the
cause is remanded, with directions to set aside the finding
and award of the Industrial Board.

*Reversed and remanded, with directions.*

FARMER, CARTER and CRAIG, JJ., dissenting.

---

(No. 11873.—Judgment affirmed.)
THE AMERICAN STEEL FOUNDRIES, Plaintiff in Error, *vs.*
THE INDUSTRIAL BOARD OF ILLINOIS *et al.* Defendants
in Error.

*Opinion filed June 20, 1918.*