CUSHMAN MOTOR DELIVERY COMPANY ET AL. *v.* MCCABE, ADMINISTRATOR

[No. 27,454.   Filed October 8, 1941.   Rehearing denied November 25, 1941.]

158

160

*William S. Isham,* of Fowler, *George C. Forrey, III,* and *White, Wright & Boleman,* all of Indiaanpolis, for appellant.

*Crumpacker & Friedrich* and *Jay E. Darlington,* all of Hammond, and *P. D. Hancock,* of Kentland, for appellee.

SWAIM, J.—This action arose out of an accident in which an automobile driven by Zephaeniah G. Dunn struck the rear end of a truck owned by the appellant, Cushman Motor Delivery Company, and in charge of the appellant, Albert Klein, which accident resulted in the death of the said Dunn. The appellee first brought an action for wrongful death in the Superior Court of Marion County against the company alone. During the trial the appellee dismissed the cause and costs were adjudged against him. Thereafter, this action was filed against both appellants in the Lake Superior Court, and was then taken on a change of venue to the Newton Circuit Court where a trial resulted in a judgment against both appellants, from which judgment this appeal is prosecuted.

Each appellant filed a plea in abatement alleging that the venue of the case was improperly placed in Lake County and that the costs of the case filed in Marion County had not been paid. The plea of the appellant Klein also attempted to present the ground that there had been no service on him.

Each plea in abatement refers to certain ineffectual attempts at service. They do not allege, however, that

the appellants did not appear nor that they were not served with process other than the summonses referred to in the pleas. The process referred to in the plea was not set out therein. "The plea cannot be aided by reference to the process or other papers in the case where they are not made a part of the plea." *C. Callahan Co.* v. *Wall Rice, etc., Co.* (1909), 44 Ind. App. 372, 374, 89 N. E. 418. On a demurrer to a plea in abatement the court is not required to look beyond the plea. Such a plea must be certain and complete to every intent and in every particular. "The pleader must not only answer fully what is necessary to be answered, but must anticipate and exclude all such matters as would, if alleged upon the opposite side, defeat his plea." *Knotts* v. *Clark Construction Co.* (1921), 191 Ind. 354, 359, 131 N. E. 921. Since the plea did not anticipate and exclude all other possible methods of obtaining jurisdiction of the appellants it was not sufficient on that question.

The appellants contend that the action was not properly filed in Lake County since the appellant company was a foreign corporation, admitted to do business in Indiana, with its Indiana office and process agent both being in Marion County, Indiana. The pleas further alleged that at the time this action was filed the appellant Klein was a nonresident of the State of Indiana. The employer company was properly joined as a party defendant in the same action with the employee for the alleged negligence of the employee as such. *Indiana, etc. Torpedo Co.* v. *Lippincott Glass Co.* (1905), 165 Ind. 361, 75 N. E. 649. Section 2-707, Burns' 1933, § 81, Baldwin's 1934, provides that in the case of nonresidents "action may be commenced and process served in any county where they may be found." Since there was no sufficient

showing in the plea to the contrary, we must assume, as against the demurrer, that the appellants were served with process in Lake County or voluntarily appeared to the action. The plea did not, therefore, sufficiently show a ground for abatement as to the venue of the action.

In *Carrothers* v. *Carrothers* (1886), 107 Ind. 530, 8 N. E. 563, it was held that a demurrer to a plea in abatement was properly overruled where the plea alleged a second action, vexatiously brought by and between the same parties for the same cause; and that the court would order proceedings stayed in the second action until the costs of the former action were paid. The court there also said that it will be presumed that the second action is vexatiously brought in the absence of any sufficient showing to the contrary. In the instant case, however, the appellants, after the demurrer to their plea in abatement was sustained, filed their verified motion to stay proceedings until the costs of the former action were paid. To this motion the appellee filed a verified answer denying that the second action was vexatiously brought. On the issue of fact thus presented the court overruled the motion. By presenting this factual issue on their motion the appellants waived any possible error of the court in sustaining the demurrer to the plea in abatement. Since the appellee by counter affidavit presented some evidence to support the court's finding and the court in such a case does have some discretion we will not disturb such finding.

Since the only possible effect of overruling appellants' motion to strike out parts of the complaint was to leave surplusage therein, it was not reversible error to overrule such motion. *Rooker* v. *Fidelity Trust Co.* (1921), 191 Ind. 141, 131 N. E. 769.

Appellants next contend that the court erred in overruling their demurrer to each paragraph of the amended complaint. Under this proposition appellants argue that "there are no allegations of ultimate facts from which the court can say, as a matter of law, that either of the appellants was negligent" with respect to the various actions complained of. This is not the correct test of a complaint for negligence where the alleged conduct is characterized as being negligent. The first paragraph of the amended complaint did allege that the appellant Klein "was careless and negligent" in that he left said truck standing on the easterly half of the concrete portion of the highway so that it obstructed practically the entire northbound lane "without adequate warning of said obstruction to travelers and drivers of vehicles approaching it from the rear, that is to say without such warning as would enable them in the ordinary course of events and with ordinary care to learn about and avoid striking said obstruction." Without regard to the allegations of other specific acts which were alleged to be negligent, the above sufficiently charges negligence to withstand a demurrer. The action of the appellant Klein, in so permitting the truck to remain standing on the road without such warning as would enable a person using ordinary care to learn of the obstruction and avoid striking it, was characterized as being negligent and was conduct from which a jury might reasonably infer that appellant was negligent. This was sufficient to withstand appellants' demurrer. *Pittsburgh etc., R. Co.* v. *Arnott, Admx.* (1920), 189 Ind. 350, 126 N. E. 13.

Appellants also contend that it affirmatively appears in each paragraph of the amended complaint that

appellee's decedent was guilty of contributory negligence and that for this reason it was error to overrule the demurrer. A demurrer to a complaint should be sustained on this ground only when the facts alleged are such that reasonable minds must infer therefrom that the injured person was guilty of contributory negligence. *Hill* v. *Chicago, etc., R. Co.* (1919), 188 Ind. 130, 122 N. E. 321. The facts alleged in neither paragraph of amended complaint require such an inference.

Under their assigned error on the action of the court in overruling the motion for a new trial the appellants complain of two instructions given by the court at the request of the appellee.

Instruction No. 3 tendered by the appellee told the jury that at the time this accident occurred there was a statute in force in Indiana "forbidding any person to park or leave a motor vehicle upon any portion of any highway outside of any city or town between the hours of one-half hour after sunset to one-half hour before sunrise unless such motor vehicle so parked or left shall display upon the front two lighted white lights, properly dimmed, and one lighted red light on the rear of such motor vehicle." The language of this instruction was apparently taken from Acts of 1925, § 29 of ch. 213, p. 590, as amended by the Acts of 1929, ch. 190, § 6, p. 620. Appellants insist that said amendment was invalid because the title of the Act of 1929 named only specific sections of the Act of 1925, which were to be amended, and said § 29 was not so named. Even though such attempted amendment was ineffectual, we are of the opinion that the giving of this instruction did not constitute reversible error. The gist of this instruction was to tell the jury that the truck here in question, while temporarily

stopped on the highway after dark, was required by statute to have on the rear thereof a lighted red light. This was required by Acts of 1925, ch. 213, § 28, p. 589, which was in force when this accident occurred. This statute provided that: "Every motor vehicle operated or driven upon any public highway in this state, shall, during the period from one-half hour after sunset to one-half hour before sunrise, carry two lighted lamps on the front, which shall display a white light, visible from the front, and one lighted lamp on the rear . . . which shall display a red light, visible from the rear." This provision was carried forward into the 1925 Act from Acts of 1919, ch. 161, p. 700. The 1919 Act was interpreted by this court in *Koplovitz* v. *Jensen* (1926), 197 Ind. 475, 484, 151 N. E. 390, as applying to a motor vehicle temporarily stopped on the highway. The appellant in that case contended that the words "Every motor vehicle . . . *operated or driven*" must be construed as covering only vehicles which were in motion. After a consideration of decisions from other states and the purpose of the provision, to protect "travelers and property upon highways against after-dark collisions with such vehicles," the court said: "We, therefore, conclude that motor vehicles at rest temporarily, or parked upon the traveled portion of a public highway in this state, as well as those in motion, are within the 'light' provision of the act (citing authorities)." In that case also there had been a collision with the rear end of a truck which had been standing on the traveled portion of the highway for several minutes without a red rear light on it.

Appellants also contend that Instruction No. 4, given by the court at the request of the appellee was erroneous in that the second sentence thereof assumed that the jury was to find for the appellee. The first sentence of the questioned instruction said

"If you find for the plaintiff it will become your duty to assess the damages." This first sentence in the instruction would seem to obviate the objection of the appellants.

The most serious question presented by this appeal is on the sufficiency of the evidence to sustain the verdict. On this question a brief statement of the facts which the jury might properly have found from the evidence is necessary.

The decedent, Dunn, was sixty years old. He was employed as an agent for a lamp bulb company. The collision in which he was killed occurred about eleven o'clock at night on State road 41, at a point about two miles south of Morocco, Indiana. At that point the concrete pavement was eighteen feet wide and there was a crushed stone and sod berm seven to nine feet wide, which, at the time of the accident, was solid enough to sustain the weight of the truck. It was a dark clear night and the pavement and berm were dry. Both the said truck and coupe driven by the decedent were traveling north. The truck was large and was loaded with seven or eight tons of paper. It was equipped with two extra gasoline tanks which could be turned on by the driver without his leaving the driver's seat or stopping the truck. As the truck approached the point where the collision occurred, the driver, Klein, noticed from the sound of the engine that the first tank was "running dry." The sound of the truck motor indicates to an experienced truck driver that the gas is getting low some little time before the engine actually stops. Klein turned the valve to turn on the gas in the reserve tank but it did not "take hold." He thereupon stopped the truck upon the northbound lane of the pavement. He thought the trouble was an air-lock in the gas tank which he could remedy

in a few minutes. After he climbed from the truck he noticed the lights of an automobile coming from the south and went back of the truck fifty or sixty feet and flagged the approaching automobile with a flash light. After that automobile passed, Klein saw a second automobile coming not far behind. This second automobile was the one being driven by the decedent. As decedent's automobile approached, Klein was standing on the east edge of the pavement, about a foot or two from the shoulder, facing south, and with his flashlight "flagged from the shoulder toward the center of the road." Decedent apparently did not see the truck until he was within a few feet of it. He then tried to swerve his automobile to the right but the left front corner of his coupe struck the right rear corner of the trailer and in the collision he was so injured that death resulted.

There was evidence from which the jury could find that immediately prior to the collision there was no red light on the rear of the truck. It is true that the appellant, Klein, the only witness who testified as to the condition of the lights at the time of the collision, said that there were five red lights on the rear of the truck at that time. He also testified that only the light on the right hand corner was extinguished by the collision and that the other four were not affected by the accident, but continued to burn until after the arrival of James Hassett and his father. James Hassett testified that at the time of this accident he was the deputy coroner; that upon receiving a call notifying him of this accident he and his father immediately drove out to the scene; that as they approached, the first thing he noticed was a man waving a flashlight; that that was all he could see; that because he was coroner he noted the position of the motor vehicles and that "there was no lights on the truck whatsoever—on the rear of the truck." His

father, Charles Hassett, testified that as he and his son drove up he did not see any lights on the rear end of the truck and that his eyesight was pretty good. While the testimony of the two Hassetts was confused and was in conflict with the testimony of Klein, their testimony was sufficient that the jury might properly have found that at the time of the arrival of the Hassetts at the scene of the accident there was no light on the rear of the truck. If the jury did so find, then it was reasonable to infer from the testimony of Klein and the circumstances surrounding the accident that there was no light on the rear of the truck prior to the accident. The evidence was sufficient to support a finding that Klein was negligent.

Appellants also insist that we may say from the evidence, as a matter of law, that the decedent was guilty of contributory negligence. The burden of proving contributory negligence was on the appellants. There was no testimony as to the speed of decedent's automobile, as to whether he was maintaining a proper lookout, as to the condition of his brakes, or as to any other possible mechanical defects of his automobile. We must, therefore, assume that the decedent was using due care for his own safety in all of these particulars unless the physical circumstances surrounding the accident furnish evidence which compels us to say, as a matter of law, that he was not using such due care.

We cannot say, as a matter of law, that decedent was guilty of contributory negligence from the mere fact that he drove his automobile into the rear end of the truck. As we have shown above there was evidence from which the jury might properly have found that there were no lights visible on the rear of the truck. Appellants offered no evidence of the

color or visibility of the truck. We must, therefore, assume that it was of such a color as to be difficult to see on a dark night. James Hassett testified that as he approached the wreck "all I could see" was the man waving the flashlight. As decedent drove along that busy highway after night, he had a right to presume that there was no unlighted truck obstructing the highway. We cannot say, as a matter of law, that the failure of the decedent to see the truck and to stop his automobile in time to avoid a collision amounted to contributory negligence. In the case of *Opple* v. *Ray* (1935), 208 Ind. 450, 459, 195 N. E. 81, this court said, "A traveler must use his faculties in an ordinary manner to discover dangers. He is not required to anticipate extraordinary hazards, nor to constantly expect and search for unusual dangers. Day or night, a traveler on the highway is charged with the duty of exercising ordinary care to observe dangers and obstructions, and is only chargeable with notice of obstructions that a person of ordinary prudence would be reasonably expected to observe. . . . The conclusion is unavoidable that the hard-and-fast rule, that one who operates a motor car at night must equip his car with such lights, and proceed at such speed, and observe the way with such care, that he will see any dangerous obstruction in the highway, and that he must stop before collision and injury to himself under penalty of being chargeable with negligence contributory to his own injury, is basically and fundamentally unsound, and the question of negligence must be determined from the facts and circumstances in each case." Ordinarily the question of negligence with respect to the visibility of objects on the road ahead is for the jury. *Schlarb* v. *Henderson* (1937), 211 Ind. 1, 4 N .E. (2d) 205.

Appellants seriously contend that the decedent was chargeable with seeing the flashlight in the hands of the truck driver, Klein, and, therefore, chargeable with knowledge of danger in the road ahead.

The only evidence concerning the flashlight being used as a signal to the decedent is found in the testimony of Klein. He said that while he was standing on the pavement fifty or sixty feet behind the truck, facing south, and a foot or two from the east edge of the concrete, he used a lighted flashlight and tried to flag decedent's automobile around. He said he "flagged from the shoulder toward the center of the road." This is all the evidence on what he actually did. He said that part of the time while he was so standing back of the truck another automobile was between him and the automobile of decedent; that after the first automobile passed he saw decedent's automobile. If he did not see decedent's automobile until after the first automobile passed, we may assume that decedent could not have seen the flashlight until after the first automobile passed. We are not told just how much distance there was between the two automobiles but Klein said the second automobile "was not very far behind." We do not know how much time elapsed between the passing of the first automobile and the arrival of the decedent's automobile. We do not know how many times, if more than once, during that intervening time, while it was possible for the decedent to have seen, that Klein "flagged from the shoulder towards the center of the road." We do not know the size or type of the flashlight he was using. We do no know the direction in which it was pointed, whether at the road or towards the oncoming automobile. If Klein waved the flashlight more than once, we do not know whether between signals the flashlight

was turned off or left burning. If it was waved back and forth several times, we do not know whether it was burning both as it was moved towards the center of the road and as it was moved back towards the shoulder. Klein did testify that the decedent did not seem to notice him "till he got right up close. Instead of turning left, the way I was motioning, he turned to the right and I had to get out of the road. He tried to miss the truck as he started turning to the right." From this testimony the jury might reasonably have inferred that decedent did not actually see Klein and the flashlight until it was too late to grasp the situation and avoid the collision, nor can we say from the meager evidence concerning the flashlight that the decedent was chargeable, as a matter of law, with having seen it in time to avoid an accident.

The question is also suggested as to whether a traveler on a traveled highway at night, seeing a moving white light on the right edge of his side of the pavement, is chargeable with notice that there is danger in the roadway beyond the light, and, ignoring such notice, is guilty of contributory negligence as a matter of law. Can we say that such a light would serve as a notice of danger to the ordinarily prudent person so traveling the highway? In order to hold that ignoring such a signal constitutes contributory negligence as a matter of law, we must say that the only reasonable inference would be that the person of ordinary prudence driving his automobile along the highway at night would interpret such a light as a warning of danger to himself; that he would not interpret such a light as indicating some person walking along, or across, the pavement and using the light as an aid to his walking or as a warning to the operators of motor vehicles of the presence of such pedestrian;

or that he would not conclude that such a light simply indicated a hitchhiker seeking a ride, or a pedestrian wanting the motorist to stop for some other reason personal to the person on foot. A red light is the ordinary signal of danger to the motorist—a signal which all recognize and understand. A burning flare has also come to mean that there is some obstruction ahead. We seriously doubt, however, if the white light from an ordinary flashlight can be said to be such a positive warning of danger to the motorist on the highway at night that he must recognize it as such and heed the warning under penalty of being chargeable as a matter of law with negligence contributing to his own injury.

It is true that a motorist, seeing a lighted flashlight being waved on the highway at night, would know that someone was carrying it and would owe the duty to that person to use due care not to injure him. A violation of that duty would constitute negligence towards that person so waving the light, and if injury resulted to him as a result of such negligence the motorist would be liable. It does not necessarily follow, however, that while the motorist is violating his duty to use due care for the safety of such pedestrian he is also violating his duty to use due care for his own safety. As said in the Restatement of the Law of Torts, § 463, p. 1227, Comment b:

"Contributory negligence differs from that negligence which subjects the actor to liability for harm done to others in one important particular. Negligence is conduct which creates an undue risk of harm to others. Contributory negligence is conduct which involves an undue risk of harm to the person who sustains it. In the one case the reasonable man, whose conduct furnishes the standard to which all normal adults must conform, is a person who pays reasonable regard to the safety of others; in the other, the reasonable man is a

reasonably prudent man, who as such pays reasonable regard to his own safety."

In the instant case, if the decedent saw the flashlight, he may have been guilty of violating his duty to use due care for the safety of Klein, but this fact would not make the decedent guilty of contributory negligence which would bar a recovery against the appellant company unless a motorist of ordinary prudence, under the same or similar circumstances, would have understood the flashlight signal to be a warning of danger to himself and would have so acted because of such signal as to avoid the danger to himself.

The jury decided that the decedent's conduct with regard to his own safety, under the circumstances of this case, was the conduct of an ordinarily prudent person. This court has many times said that contributory negligence is ordinarily a question of fact for the jury, and that it is only in cases where the facts are undisputed and where only a single inference can be reasonably drawn therefrom that this court can say, as a matter of law, that a certain course of conduct does, or does not, constitute contributory negligence. *Inland Steel Co.* v. *King* (1916), 184 Ind. 294, 110 N. E. 62.

Under the facts as shown by the evidence here, would a man of ordinary prudence have seen the flashlight in time to have grasped the situation and to have avoided the collision? Would such ordinarily prudent person, even if he saw such flashlight in time to have turned or stopped before striking the truck, have considered such light as a notice or warning of danger to himself. Would all reasonable minds agree as to the answers to these two questions or is there room for an honest difference of opinion between reasonable minds? If there is room for reasonable

minds to reach different inferences and answers the verdict of the jury must stand. *Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1940), 216 Ind. 545, 24 N. E. (2d) 284. Since we cannot say that reasonable minds might not differ on the answers to the above two questions, we must hold that the evidence was also sufficient to sustain the finding of the jury on the question of contributory negligence.

Appellants assigned as one of the reasons for a new trial surprise which ordinary prudence could not have guarded against, in that the witness James J. Hassett denied the execution of an affidavit purportedly executed by him as a part of the coroner's inquest, and said he did not remember making a statement in a deposition, taken in connection with the first case filed in Marion County, to the effect that he had signed said affidavit. The purported affidavit said that when Hassett and his father arrived at the scene of the accident the lights on the rear of the truck were burning.

The appellants made no motion for a continuance or to set aside the submission and withdraw the case from the jury. This is the ordinary remedy to which the appellants here might have been entitled. *Ellis* v. *City of Hammond* (1901), 157 Ind. 267, 61 N. E. 565; *Louisville, New Albany and Chicago Railway Co.* v. *Hendricks* (1891), 128 Ind. 462, 28 N. E. 58. Since appellants elected to proceed with the trial and rely on the evidence at hand, we cannot say that it was error for the trial court to refuse to grant a new trial on this ground.

Finding no reversible error the judgment is affirmed.

NOTE.—Reported in 36 N. E. (2d) 769.