NEW YORK CENTRAL RAILROAD COMPANY *v.* MILHISER

[No. 28,938. Filed June 11, 1952. Rehearing
denied October 8, 1952.]

182

*Baker & Daniels,* of Indianapolis, and *Christian & Waltz,* of Noblesville, for appellant.

*Seth S. Ward,* of Indianapolis, for appellee.

GILKISON, J.—Appellee filed his amended complaint in one paragraph seeking a judgment in damages for personal injuries allegedly sustained in a railroad crossing accident which occurred about 3:30 P. M. December 19, 1945, when a passenger automobile operated by appellee, was struck on a public grade crossing in Marion County, Indiana, by a locomotive drawing a train of the appellant. It is alleged that appellant's locomotive and train of cars was traveling westward on the north track of a double track railroad intersecting the north and south highway upon which appellee was traveling northward. It is averred that appellant, in approaching the crossing at the time, did not sound the whistle or ring the bell on the locomotive as required by statute and that the collision and resulting injuries to appellee were proximately caused by this negligence.

Appellant put the amended complaint at issue by an answer agreeable with our Rule 1-3, and a second paragraph of answer admitting the collision, but averring that at the time, appellee was working for the Brandts

Furniture .Company of Celina, Ohio, and that his injuries arose out of and in the course of his employment. That after the collision appellee made application for benefits under the Workmen's Compensation Laws of Ohio and that he has been paid $10,298.06 and is still receiving benefits for the injuries so received. It is averred that this constitutes a settlement with his employer for the injuries suffered by appellee, and for which he sues.

A demurrer to the second paragraph of answer was sustained.

The case was tried by jury. At the close of plaintiff's evidence, defendant moved for a peremptory instruction, which motion was denied. The motion was renewed at the close of all the evidence and was denied.

The verdict was for the appellee, fixing his damage at $50,000. A motion for new trial based on fifteen reasons timely filed, was overruled. Judgment was duly rendered on the verdict from which the appeal is taken.

Four alleged errors are assigned. Appellant asserts correctly that the first three of these present the same question—"that the verdict is not sustained by sufficient evidence." The fourth reason is that it was error to sustain the demurrer to the second paragraph of answer. We shall now consider the latter assigned error. In substance it is: Does the acceptance of Workmen's Compensation for an injury, under the law of a state other than Indiana, constitute a settlement of damages sustained from a tort committed in Indiana by a person other than the employer.

Indiana's Workmen's Compensation Act is binding upon Indiana employers and their employees only §§40-1201, 40-1202 et seq. Burns' 1952 Replacement. §3.4 Small's Workmen's Compensation Law of Indiana.

§40-1202 Burns' 1952 Replacement, providing:

"From and after the taking effect of this act [§§40-1201—40-1414, 40-1503—40-1704], every employer and every employee, except as herein stated, shall be presumed to have accepted the provisions of this act, respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment, and shall be bound thereby; . . ."

and §40-1213, providing that:

"Whenever an injury or death for which compensation is payable under this act [§§40-1201—40-1414, 40-1503—40-1704], shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee, or his dependents, in case of death may commence legal proceedings against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this act. In such case, however, if the action against such other person is brought by the injured employee or his dependents and judgment is obtained and paid, and accepted or settlement is made with such other person, either with or without suit, then from the amount received by such employee or dependents there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or dependents, plus the medical, surgical, hospital and nurses services and supplies and burial expenses paid by the employer and the liability of the employer to pay further compensation or other expense shall thereupon terminate. . . ."

refer only to Indiana employers and their employees. It could not embrace employees of employers in other states operating under the Workmen's Compensation Laws of such other states. Each of these sections specifically limit their application to liabilities "under this act." They do not apply to compensation liabilities or

payments under the Workmen's Compensation Laws of other states. §40-1213 *supra* of the statute is a protection provided for the employer and not for a negligent third party. Such third party is legally liable for the full amount of damages caused by his negligence. He has no concern with any payments between the employer and employee so long as he is safe from double liability. *Forcum-James, Inc.* v. *Johnson* (1945), 115 Ind. App. 655, 659, 59 N. E. 2d 730; *Weis* v. *Wakefield* (1941), 111 Ind. App. 106, 116, 38 N. E. 2d 303; Small's Workmen's Compensation Laws of Indiana, §11.12 pp. 352, 354; *Mullins* v. *Bolinger* (1944), 115 Ind. App. 167, 171 and cases cited, 55 N. E. 2d 381, 56 N. E. 2d 496.

In the State of Ohio it seems to be the law that,

> "An employe who has been injured or the personal representative of an employe who has been killed in the course of his employment, after having applied for and received an award under the workmen's compensation law, and after such award has been paid in full, may maintain an action against a stranger for damages for negligently causing the same personal injury."

Page's Ohio General Code 1-A, §1465-72; *Biddinger* v. *Steininger-Taylor Co.* (1915), 18 Ohio N. P. 42 (N. S.); 25 Ohio Decisions 603; *The Ohio Traction Co.* v. *Washington* (1916), 6 Ohio App. 273; *Vayto v. Terminal & Ry. Co.* (1915), 18 Ohio N. P. 305; *The Trumbull Cliffs Furnace Co.* v. *Shachovsky* (1924), 111 Ohio State 791, 146 N. E. 306.

So in determining the demurrer to appellant's second paragraph of answer, it cannot matter whether the law of Indiana or the law of Ohio applies, since, so far as this question is concerned, the law in each state is the same.

The court did not err in sustaining appellee's demurrer to the second paragraph of answer.

In determining the sufficiency of the evidence to sustain the verdict we are bound by the rule that if there is some evidence, or reasonable inferences that may be drawn from the evidence, to sustain each material element essential to recovery we must affirm the judgment. On appeal we may not weigh the evidence. Therefore, we may consider only the evidence most favorable to the appellee.

There is evidence that appellee was traveling north toward the railroad crossing on the public highway; that there were trees on the right side of the highway in the direction from which the train was coming. That there is a hedgerow and large trees on the south side of and paralleling the railroad tracks, obscuring the view to the northeast. It was a dark, snowy, cloudy day. At the time of the collision it was snowing and blowing. The estimated speed of the train was seventy-five or eighty miles per hour, and no whistle was sounded and no bell was rung as the train approached the crossing, as required by law. Appellee stopped when about twenty feet south of the south rail of appellant's tracks and looked both ways for approaching trains but saw none, and then he started across. He was fifteen or twenty feet from the track the train was on, when he first saw the approaching train a short distance away. He saw some smoke but did not know whether it came from a house or from a train that had passed. The crossing was full of holes and ruts, and at the time of the accident was covered with snow and ice. The snow was "boiling up" from under the moving train, and it and the smoke and steam from the locomotive smokestack was floating over the locomotive right around the engine and the left side of the cab so that the vision of the fireman on the engine was obstructed.

This evidence is sufficient to sustain each material averment of the complaint as to the negligence of the appellant.

It has been held many times that all reasonable presumptions are indulged on appeal in favor of the rulings and judgments of a trial court, that the record must exhibit the errors for which the reversal is sought, and that a court of appeals will not presume anything in favor of appellant to sustain his alleged error. *Cadwell* v. *Teaney* (1927), 199 Ind. 634, 641, 157 N. E. 51; *Washington Hotel Realty Co.* v. *Bedford Stone, etc., Co.* (1924), 195 Ind. 128, 136, 143 N. E. 156; *Schell* v. *Schell* (1927), 199 Ind. 643, 646, 158 N. E. 594; *Coleman* v. *State* (1925), 196 Ind. 649, 652, 149 N. E. 162; *Jackson* v. *State ex rel.* (1924), 194 Ind. 130, 135, 142 N. E. 1; *Straw* v. *State* (1925), 197 Ind. 606, 609, 149 N. E. 430, 151 N. E. 695.

In view of the general verdict in this case and the action of the trial judge in overruling the motion for new trial questioning the sufficiency of the evidence, no question is presented to this court as to the proximate cause of appellee's injuries, since this matter has been determined by the jury and the trial judge from the conflicting evidence in the case. This determination is founded upon ample evidence and is binding upon us.

It has been said with authority that the presumption in favor of the rulings of the trial court is one of the strongest presumptions in the consideration of a cause on appeal, and this presumption is particularly applicable in determining questions which affect the weight or sufficiency of the evidence to sustain each element essential to the jury's verdict. *Indianapolis Traction, etc., Co.* v. *Hensley* (1917), 186 Ind. 479, 495, 115

N. E. 934, 117 N. E. 854; *Cincinnati, Hamilton and Indianapolis Railroad Co.* v. *Madden* (1893), 134 Ind. 462, 469, 34 N. E. 227; *Christy* v. *Holmes* (1877), 57 Ind. 314, 315; *Ferrara* v. *Genduso* (1940), 216 Ind. 346, 348, 24 N. E. 2d 692; *Wisconsin Nat. Life Ins. Co.* v. *Meixel* (1943), 221 Ind. 650, 654, 51 N. E. 2d 78.

Appellant contends that the evidence shows appellee was guilty of negligence as a matter of law, that contributed to his injuries. The burden of showing ██ contributory negligence was upon appellant. Ordinarily contributory negligence is a question of fact for the determination of the jury and trial court. It is only in cases where the facts are undisputed and but a single inference can be drawn therefrom that this court can say as a matter of law that a course of conduct shown constitutes contributory negligence. *Associated Truck Lines* v. *Velthouse* (1949), 227 Ind. 139, 153, 84 N. E. 2d 54; *Northwestern Transit, Inc.* v. *Wagner* (1945), 223 Ind. 447, 453, 61 N. E. 2d 591; *Schlarb* v. *Henderson* (1936), 211 Ind. 1, 7, 4 N. E. 2d 205; *Opple et al.* v. *Ray* (1935), 208 Ind. 450, 460, 195 N. E. 81; *Grand Trunk, etc., R. Co.* v. *Cather* (1929), 92 Ind. App. 563, 572, 167 N. E. 551.

The evidence heretofore noted prevents us from saying appellee was guilty of contributory negligence as a matter of law. The question of appellee's contributory negligence was properly submitted to the jury. Its verdict is against appellant on that proposition. The trial court properly overruled each motion for a directed verdict. *Cushman Motor Delivery Co.* v. *McCabe, Admr.* (1941), 219 Ind. 156, 169, 36 N. E. 2d 769; *Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1939), 216 Ind. 545, 553, 24 N. E. 2d 284; *Grand Trunk, etc., R. Co.* v. *Cather* (1929), supra; *Haughton* v. *Aetna Life Ins. Co.* (1905), 165 Ind. 32, 40, 74 N. E. 613. Weather and atmospheric

conditions, the color of objects and their background, and other elements affect the visibility of objects not only at night but in the daytime. The coloring of objects in a manner to make them blend with the surroundings, reduce their visibility. From a standpoint of reasonable care, speed has a direct relationship to visibility. See *Opple* v. *Ray* (1935), 208 Ind. 450, 548, supra. That weather conditions—flying snow, that "kicked up" by the rapidly moving train as well as that picked up and carried by the wind—affected and greatly reduced visibility was a fact quite as well known to appellant as to appellee. Appellant rightly contends that this fact cast upon appellee the duty of exercising greater care for his safety, that is, ordinary care commensurate with the apparent peril. But the corollary is equally true. Since visibility was so greatly reduced the necessity for sounding the whistle and ringing the bell on the locomotive as required by statute (§55-1243, Burns' 1951 Replacement) became of the utmost importance to travelers, particularly to appellee. Our law contemplates situations like this, and provides a means of detecting and avoiding the danger of collisions with railroad trains at grade crossings when visibility is obscured or reduced by weather or atmospheric conditions, by the simple method of sounding the whistle and ringing the bell. In other words, by making it possible to hear the approaching train when it cannot be readily seen, thus utilizing the sense of hearing as well as the sense of sight. There is ample evidence that appellant failed to perform this duty, and that this failure was the proximate cause of the collision and resulting injuries to appellee.

Appellant contends that it was prevented from having a fair trial by reason of the misconduct of appellee's attorney, as follows:

(a) That the attorney stated that the case was venued to Hamilton County to prevent appellee from subpoenaing the doctor to testify.

(b) That the attorney stated that Dr. Thompson was on the payroll of the insurance company and of appellant.

(c) He accused appellant of doing a cowardly thing on a crippled boy.

(d) That he said: "I am saying that he has a big belt and I wish you wouldn't hit him below it on the wooden leg."

(e) That these statements created in the mind of the jury sympathy for appellee and hatred of appellant.

The record shows that the remarks complained of came about thus: Appellee's attorney moved to strike out a certain statement made by a Dr. Thompson to the Industrial Commission of Ohio, as contained in an exhibit marked 5-b, giving his reasons for the motion.

Appellant's attorney then said to appellee's attorney: "You can bring in the doctor."

To which appellee's attorney answered: "You can bring Dr. Thompson in. You have already talked to him. I will not bring him in because he is on your payroll. If you say you haven't talked to him I will bring him. It costs just $100.00 to bring him up here."

Thereupon appellant's attorney asked the court to instruct the jury to disregard all the statements made by appellee's attorney about Dr. Thompson and how much it would cost to bring him to the court.

There was further colloquy between the attorneys on this subject, and an attorney for appellant moved the court to set aside the submission of the case on account of the prejudicial remarks of counsel. Whereupon the court instructed the jury to disregard the remarks of appellee's counsel for all purposes in the case, not to con-

sider them as any part of the evidence or for any other purpose. The court overruled the motion.

The remarks made were side remarks between counsel during the trial, not made in opening statements or in argument at the close of the trial. There was offensive baiting by the attorneys of one side which brought about equally offensive remarks by one of their opponents. Such conduct is undignified, unwarranted and tends to bring the attorneys engaging in it, the cause they represent and the courts, generally, into disrepute. Able lawyers always will avoid such conduct even when their opponents deliberately engage in baiting. However, in the instant case the judge of the court immediately reprimanded the offender and by very direct and positive instructions directed the jury to disregard the remarks for all purposes in the case. Such an instruction timely made, frequently has been held to correct any injury done by such remarks. *Thomas Madden, Son & Co.* v. *Wilcox* (1910), 174 Ind. 657, 668, 91 N. E. 933; *West Muncie Strawboard Co.* v. *Slack* (1904), 164 Ind. 21, 29, 72 N. E. 879; *Johnson* v. *Brown* (1891), 130 Ind. 534, 537, 28 N. E. 698; *Rudolph* v. *Landwerlen* (1883), 92 Ind. 34, 37; *N. Y. C. R. Co.* v. *DeLeury* (1934), 100 Ind. App. 140, 149, 192 N. E. 125.

The trial court is in a better position to determine the effect of such remarks than is this court and it has a wide field of discretion as to withdrawing the case from the jury. *King* v. *Ransburg* (1942), 111 Ind. App. 523, 532, 39 N. E. 2d 822, 40 N. E. 2d 999 and authorities cited; *Coats* v. *Strawmeyer* (1939), 107 Ind. App. 102, 107, 21 N. E. 2d 433; *Meeker, Guardian* v. *Decker* (1937), 104 Ind. App. 594, 598, 10 N. E. 2d 416.

This court will interfere only where, notwithstanding the efforts of the trial court to correct the abuse. the

irregularity appears to be such as to prevent a fair trial. *Montgomery-Ward & Co.* v. *Wooley* (1950), 121 Ind. App. 60, 66 and authorities cited, 94 N. E. 2d 677.

The trial court took immediate steps to correct any evil that might have resulted from the remarks noted. Later it sustained the motion to strike out Exhibit 5-b and so instructed the jury. It did not abuse its discretion in overruling the motion to withdraw the submission of the cause from the jury.

Objection was made in the trial court to one of appellee's attorneys exhibiting a chart on one side of which was written in large black letters the elements of damage which the attorney intended to argue before the jury, and which were divided into five principal elements, as follows: (1) Medical expenses, (2) Permanent Impairment, (3) Future Pain & Suffering, (4) Future Medical Care, (5) Future Loss of Wages. On the other side were figures of "Expect'y", showing 10,519 plus days. Under this was the figure 5 and under this below a drawn line were the figures $52,598.00.

As soon as this chart was exposed, appellant's attorneys objected to its display to the jury. The trial judge immediately asked that the chart be handed to him. He then sustained the objection and instructed the jury that the matters contained on the chart would be covered by his instructions at the proper time, and that appellee's attorney should make his argument without displaying the chart. It was then removed from the sight of the jury. It was not in a position where the jury could see it for more than twenty seconds. Appellant then moved to set aside the submission and discharge the jury because of the misconduct of appellee's attorney in the manner as noted. The motion was overruled.

So far as indicated on the chart, it contained nothing that the attorney was not authorized to discuss and

probably did discuss in his argument. If the attorney had held a small copy of the chart in his hands or on his desk, undoubtedly he could have refreshed his memory from it without violating any of the rules. There is nothing to indicate that the jury knew the meaning of the words on the chart, but if it did, it could not learn much from it in twenty seconds. We think appellant received as favorable a ruling from the court as it was entitled to, and that no error was committed in overruling this motion to set aside the submission and discharge the jury.

Appellant contends that the trial court erred in sustaining appellee's motion to strike out appellant's exhibit 5-b. This exhibit was a·certified copy of an unverified statement of one Dr. Thompson, filed in the matter of appellee's application for Workmen's Compensation, before the Industrial Commission of Ohio. There is nothing indicating when the doctor made this statement, except statements made thereon as follows: "date report received from employer 12-28-45. Date returned to employer 1-8-46." These statements indicate that the Industrial Commission of Ohio received the exhibit from appellee's employer eight days after the injury. We think the authorities clearly state the rule that, where a certified copy of a public record containing incompetent matter is offered in evidence, it is inadmissible. *Steele* v. *Campbell* (1948), 118 Ind. App. 549, 552 82 N. E. 2d 274. See also *Pence* v. *Myers* (1913), 180 Ind. 282, 286, 101 N. E. 716; *Modern Woodmen, etc.* v. *Miles* (1912), 178 Ind. 105, 112, 97 N. E. 1009; *Hicks* v. *State* (1905), 165 Ind. 440, 441, 75 N. E. 641; *Naanes* v. *The State* (1896), 143 Ind. 299, 303, 42 N. E. 609; *The Union Central Life Insurance Company* v. *Hollowell, Admr.* (1896), 14 Ind. App. 611, 615, 43 N. E. 277.

The exhibit 5-b was offered for the purpose of proving what Dr. Thompson in his unverified statement said that the appellee told him concerning how the collision in which his injuries were received, occurred. This evidence was incompetent. *Peoria Cordage Co.* v. *Industrial Board* (1918), 284 Ill. 90, 119 N. E. 996; L. R. A. 1918 E p. 822 and cases cited; *Wright v. Peabody Coal Co.* (1948), 225 Ind. 679, 694, 77 N. E. 2d 116; 32 C. J. S. *Evidence,* §636, pp. 488, 489; *Barr* v. *Bennington* (1934), 207 Ind. 268, 269, 192 N. E. 441. The record indicates that the evidence of this witness as far as competent was available to appellant without resort to this exhibit. As a witness the court could have passed upon the competency of the doctor's evidence and he could have been cross-examined by appellee. This could not be done if the exhibit had been left in the evidence. We find no error in sustaining the motion to strike out the offered exhibit.

Appellant complains of instruction No. 19 given by the court on its own motion, in which the jury was instructed in substance that the mere fact that appellee had received compensation benefits from the Industrial Commission of Ohio did not constitute an election on the part of appellee so as to bar the action and should not be considered in mitigation of damages. Appellant's objection to this instruction in substance is that (1) a plaintiff can recover damages only once for an injury arising out of an accident; (2) that having accepted compensation from the Industrial Commission of Ohio appellee is barred from recovery in this cause.

All that we have said concerning the sustaining of the demurrer to the second paragraph of answer applies with equal effect to the giving of this instruction. The authorities cited on that proposition are applicable

here without restating them. We find no error in giving this instruction.

Appellant complains of instruction No. 21 given by the court on its own motion. This instruction correctly states the several elements of damage that the jury might consider in deliberating of its verdict under the issues joined. The objections to it are the same as made to instruction No. 19. We find no error in giving this instruction.

Appellant objects to appellee's tendered instruction No. 1, which was given by the Court. This instruction is as follows:

> "You are instructed that in order for the negligence of an injured party to defeat his right of recovery such negligence must be a proximate and not a remote cause of the injury in question. If there is no evidence on the issue of contributory negligence, then the finding on that issue should be in favor of the plaintiff. The burden of proof as to contributory negligence in an action for personal injuries is on the part of the defendant. The jury is the sole judge of the facts to be decided in this case, but you should take the law as given to you by the court."

The objection to this instruction is in substance that it incorrectly states the law; that the law is "that any negligence of the plaintiff which contributes in the slightest degree to his injuries will defeat his recovery." In support of this position appellant cites *Baltimore, etc., R. Co.* v. *Kleespies* (1906), 39 Ind. App. 151, 76 N. E. 1015, 78 N. E. 252, and *New York Central Ry. Co.* v. *Powell* (1943), 221 Ind. 321, 47 N. E. 2d 615. We do not find that either of these cases supports appellant's contention as to the law of contributory negligence, and we have found no authority that does. The Kleespies case merely holds that an instruction to the effect that ". . . The plaintiff is required

to prove by a preponderance of the evidence that the negligence of the defendants, or of either of them, was the proximate cause of his injuries, but the plaintiff is not required to prove his freedom from contributory negligence. Such defense may be proved by the defendants under the general denial and *must be established by a like preponderance of the evidence."* (Our italics.) This is a correct statement of the law upon the question of contributory negligence as far as it goes, pp. 162, 163. It refutes appellant's position stated in its objection.

In the Powell case appellee's decedent was killed when the gasoline truck he was driving was struck by a train at a grade crossing. A penal statute making it a felony to drive such vehicle upon the tracks of a railroad unless the driver should first bring the vehicle to a full stop, etc. (§10-1909, Burns' 1942 Replacement) was involved, and so far as shown in the opinion, no instruction concerning contributory negligence was involved. The court engaged in a discussion of negligence and contributory negligence, but we do not find that it either said or implied that the position of appellant with respect to contributory negligence as stated in its objection in the instant case, is correct. We believe *Heiny, Admx.* v. *Pennsylvania R. Co.* (1943), 221 Ind. 367, 47 N. E. 2d 145, correctly states the law of contributory negligence, even where the statute involved in the Powell case is involved. In that case in determining whether a peremptory instruction for defendant should have been given because there were inferences of contributory negligence, this court said:

"We hold, therefore, that the decedent's conduct, like that of appellees, is to be measured by the standard of ordinary care. It will not be presumed that the decedent was guilty of contributory negli-

gence merely because there was a collision between his truck and the locomotive. . . .

"Under our law the burden is upon the defendant to establish the contributory negligence of the plaintiff, though it need not be affirmatively pleaded. . . . Such burden is no different in character than that which rests upon a plaintiff to establish negligence on the part of the defendant."

Instruction No. 1 is a correct statement of the law of contributory negligence as far as it goes, and it was not error to give it.

Appellant asserts that the damages assessed are excessive.

Without going into detail we may say that the injuries received by appellee were unusual in magnitude. His pain and suffering must have been very severe. He was necessarily hospitalized for many weeks during which time he had multiple major operations. His sight is badly damaged. He received a serious head cut which extended down into the left eye and it has never focused since. He has to hold his head in a slanting position to see. His head remains numb and aches constantly. He had a number of operations on a crushed arm and a crushed leg. His chest was injured and it hurts constantly. He lost a leg and now wears an artificial leg which gives him pain with every step. He is now able to work some, from one to three days a week. His medical and hospital expenses ran from $7,000 to $10,000. Prior to his injury he had been an athlete and earned from $2,000 to $3,000 a year refereeing games. He can do no work of this kind now.

He was born March 30, 1907, was 39 years old at the time of the accident, weighed 212 pounds and was in good health.

The rule is that appellate courts will not reverse judgments in actions of tort, on the grounds of exces-

sive damages, unless the assessment is so large as to induce the belief that the jury was actuated by prejudice, partiality or corruption. *Wabash R. Co.* v. *McDaniels* (1914), 183 Ind. 104, 113, 107 N. E. 291; *Creamery, etc., Co.* v. *Hotsenpiller* (1902), 159 Ind. 99, 105, 64 N. E. 600; *Illinois, etc., R. Co.* v. *Cheek* (1899), 152 Ind. 663, 678, 53 N. E. 641; *Terre Haute, etc., Traction Co.* v. *McDermott* (1924), 82 Ind. App. 614, 617, 145 N. E. 782; *Lake Erie, etc., R. Co.* v. *Howarth* (1919), 73 Ind. App. 454, 471, 127 N. E. 804.

We think the jury was impressed and properly so, by the unusually severe injuries suffered, their permanency and the resulting influence thereof upon the life of appellee. There is no indication that it acted from prejudice, partiality or corruption.

Finding no error in the record the judgment is affirmed.

Bobbitt, J., not participating.

Draper, J., concurs with opinion in which Jasper, C. J., concurs.

NOTE.—Reported in 106 N. E. 2d 453.

## CONCURRING OPINION

DRAPER, J.—If the appellee's attorney believed counsel's assertion that he "could bring in the doctor" was prejudicially improper, he should have appealed to the court for corrective action. Instead, he made remarks which were entirely improper and which, in my opinion, went far beyond anything which might be considered as being justified by the provocative statement of appellant's counsel.[1]

---

[1] "Mr. Waltz: You can bring in the Doctor.

"Mr. Ward You can bring Dr. Thompson in. You have already talked to him. I will not bring him in because he is on

On motion of appellant the court admonished the jury to disregard the remarks of counsel for the plaintiff for

your payroll. If you say you haven't talked to him I will bring him. It costs just $100.00 to bring him up from Indianapolis.

"Mr. Stipher: I want the court to instruct the jury to disregard all the statements made by Mr. Ward about Dr. Thompson and how much it would cost to bring him here because it is highly prejudicial in this case and made to influence the jury.

"Mr. Ward: You know that doctor don't have to leave his county and you jump on me about it and you know it is absolutely a cowardly thing on a crippled boy like that. That is why the case was brought up here, so we couldn't subpoena the doctors. Jump on me for not bringing a doctor here and I will make you eat it.

"Mr. Waltz: I think we should try the case orderly without all this noise. We object to any further speeches on the part of Mr. Ward.

"Mr. Ward: This doctor is on that insurance company payroll and then they ask me why we don't bring the doctor here, a place he does not have to come. We never brought this change of venue up here and then you ask me why I don't bring a doctor up here, a place where he don't have to come.

"Mr. Waltz: At this time I would like to move for the court to set aside the submission of this case on account of the prejudicial remarks of the counsel.

"The Court: The jury is instructed at this time that the remarks of counsel for the plaintiff will be disregarded for all purposes in this case. You will not consider them as any part of the evidence or for any other purpose and you will completely disregard anything that has been said since that exhibit has been handed to the jury, for any purpose.

"Mr. Ward: I would like to move the court to instruct the jury to disregard the remarks Mr. Waltz said about bringing a doctor here when the statute says a doctor does not have to leave his county. If that wasn't done to prejudice the jury.

"Mr. Waltz: I move the Court to disregard those remarks and further that the court set aside the submission for the remarks just made by the counsel for the plaintiff.

"The Court: That is overruled, and I don't want to hear anything from either side while the jury has that exhibit.

"TO WHICH RULING OF THE COURT THE DEFENDANT AT THE TIME EXCEPTS. EXCEPTION GRANTED."

any purpose and to completely disregard what had been said. The court overruled appellant's motion to set aside the submission.

Courts should not hesitate to set aside the submission of a case when the interests of justice require it, and I think the court would have been justified in setting aside the submission in this case. In the exercise of his discretion he refused to do so. We said in *Gerking* v. *Johnson* (1942), 220 Ind. 501, 44 N. E. 2d 90:

> "An appellate court is too far distant from the scene to gauge the effect of pettifogging remarks of trial attorneys and must repose some confidence in the trial judge's determination that what was said outside the record was rendered harmless by his admonition to the jury."

It is only on that basis, and with some regard for the fact that the diatribe under consideration was not wholly uninvited, that I can concur in this decision.

The appellant directs our attention to other instances of alleged misconduct on the part of plaintiff's attorney. A reference to the record discloses, however, that with one exception where the record was incomplete, no proper objection was made. The cumulative effect of other asserted instances of misconduct, concerning which no objection was made in the trial court, cannot, in my opinion, furnish any basis for reversal.

Jasper, C. J., concurs.

NOTE.—Reported in 106 N. E. 2d 453.

## ON PETITION FOR REHEARING

GILKISON, J.—In the opinion we quoted the first grammatical paragraph of §40-1213, Burns' 1952 Replacement, §1, Ch. 258, p. 733, Acts 1951. We did not

use this quotation with any thought of asserting that the Acts of 1951 became effective retroactively. We cite it because it and §4, Ch. 188, Acts 1945, pp. 580, 585 are amendments of §13 of Chapter 172 of the Workmen's Compensation Act of 1929. That act as well as the quoted amendments very definitely limit the application of this section, to "compensation payable under this act."

We do not think the Indiana Workmen's Compensation Act of 1929 has ever been held broad enough to allow a tort-feasor, other than the employer, to plead the receipt of industrial compensation under the laws of another state as a defense, set-off or in mitigation, to a complaint seeking damages for such a tort.

The opinion seems to have caused some confusion as to this proposition, and this supplemental opinion is written to make the opinion more definite. We think the demurrer to the special answer was properly sustained and that the court's instruction No. 19 is not erroneous.

The petition for rehearing is overruled.

Bobbitt, J., not participating.

NOTE.—Reported in 108 N. E. 2d 57.