JOHNSON *v.* STATE OF INDIANA.

[No. 1167-S-131. Filed July 19, 1968.]

*Hilbert L. Bradley,* Gary, for appellant.

*John J. Dillon,* Attorney General, and *Michael V. Gooch,* Deputy Attorney General, for appellee.

HUNTER, J.—Appellant, a notary public, was convicted after non-jury trial in the Lake Criminal Court of falsely attesting an affidavit. The affidavit in question, purportedly sworn to before the appellant by one Floyd Mitchell, is in the form of

an application for an absentee voter's ballot. Appellant, besides being a notary public, was a precinct election official.

The statute under which appellant was charged is Ind. Anno. Stat. § 10-3602 (1956 Repl.), and reads as follows:

"Falsely attesting affidavit—Whoever, being a notary public or other officer or person authorized to administer oaths, certifies that any person was sworn or affirmed before him to any affidavit or other instrument or writing, when, in fact, such person was not so sworn or affirmed, shall, on conviction, be imprisoned in the state prison not less than three (3) years, and fined not less than ten dollars ($10.00) nor more than one thousand dollars ($1000)."

Appellant urges upon this appeal only two causes for reversal:

(1) That the evidence is insufficient on the element of criminal intent to sustain the finding of guilty; and

(2) That appellant's trial counsel inadequately and incompetently represented him at trial, thereby resulting in a denial of appellant's right to due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States and by Article 1, Section 13 of the Constitution of Indiana.

Turning to appellant's first allegation of error, his challenge to the sufficiency of the evidence, this Court, on appeal, will consider only the evidence most favorable to the appellee, State of Indiana, together with all reasonable and logical inferences that may be adduced therefrom. *Capps* v. *State* (1966), 248 Ind. 472, 229 N. E. 2d 794. That evidence reveals the following:

On May 1, 1964, the appellant notarized an application for absent voter's ballot which was purportedly signed by one Floyd Mitchell of 2570 E. 22d Place, Gary, Indiana.

The notarization read:

"Subscribed and sworn to before me this 1 day of May, 1964.

s/s   Eugene Johnson"

On the same application, the appellant's signature also appeared below a printed statement which read:

"We, the undersigned legal freehold voters residing in the same precinct as the applicant for such Absent Voter's Ballot, certify that we are resident freehold voters of said precinct and that we are personally acquainted with said applicant and that the above statements are to our personal knowledge true."

A handwriting expert testified that the same person who had twice signed the appellant's name to the application in question here also signed appellant's original notarial bond. From this a valid inference may be drawn that the appellant did notarize the application.

William Boyd, Jr., the step-son-in-law of the purported applicant, Floyd Mitchell, then testified that Floyd Mitchell died on November 23, 1963, when he was approximately 45 years of age. That is to say, Floyd Mitchell, with whom the appellant was personally acquainted, had been deceased for more than five (5) months when the appellant notarized the purported signature of Floyd Mitchell on the application for an Absent Voter's Ballot in question here.

It is the appellant's contention, however, that the evidence presented by the State in this case is insufficient as a matter of law to support the finding of guilty because there has been no proof that appellant had the requisite *mens rea* or criminal intent necessary to establish a violation of § 10-3602, *supra*. In support of this proposition appellant cites the recent case of *Noble* v. *State* (1967), 248 Ind. 101, 223 N. E. 2d 755.

The *Noble* case holds that since the crime of falsely notarizing a document is purely *malum prohibitum* rather than *malum in se, mens rea* or an intent to violate the statute must exist in order for any such act to become punishable as a crime. We are in full agreement with that statement of the law. However, it must be realized that a central factor in determining whether a notary public has

the intention to falsely attest an affidavit is whether he has knowledge of the true state of the facts, or reasonable means of acquiring such knowledge, at the time and under the circumstances. Where a notary public attests an affidavit purportedly signed in the notary's presence by an affiant he has known for a substantial period of time, even though the purported affiant has been dead for over five months at the time of the execution of the affidavit, it cannot be seriously contended that the guilty knowledge required for proof of *mens rea* has not been established. Nor is the requirement any different if the notary attests an affidavit which is still blank when he signs it, for in that instance, the notary cannot possibly assure himself that the signature of a purported affiant will be validly placed on the document.

It is precisely the factor of guilty knowledge which most clearly distinguishes this case from *Noble* v. *State, supra*. In the *Noble* case, the defendant was employed at a license branch which processed thousands of license applications a day, and, as a practical matter, the notaries public employed there could not check the credentials of every applicant while present. And when notarizations were later signed, the applicants were no longer present. Thus, the defendant there neither knew, nor had the means of reasonably discovering her false attestations at the time and under the circumstances.

The record in the present case, however, does not admit of such an interpretation. The defendant was shown to have had sufficient knowledge at the time of notarizing the application of "Floyd Mitchell", which is State's Exhibit 1, to determine that the person who actually executed the application as Floyd Mitchell, was in fact, someone other than Floyd Mitchell.

Although, as in *Noble* v. *State, supra,* the isolated overt act of notarizing a falsely signed document does not, by itself, establish the specific intent required to commit this particular crime, this overt act can be combined with other facts and circumstances which were not present

in the *Noble* case; and from this combination of overt acts, facts and circumstances the defendant's criminal intent, his state of mind to falsely attest, may be inferred. See *Groneau* v. *State* (1967), 201 So. 2d 599, 602 (Fla.) ; Wharton's Criminal Law Procedure, § 60, (Supp. 1968).

Appellant's second argument in his brief consolidates several allegations of error made in his motion for new trial by which he contends that he was inadequately and incompetently represented by his counsel at trial and was thereby denied Due Process of Law as guaranteed by the Fourteenth Amendment to the Constitution of the United States, and by Article I, § 13 of the Constitution of Indiana.

Appellant bases his claim of incompetency of his trial counsel upon the failure and refusal of such counsel to call certain witnesses including the appellant himself. Appellant contends on appeal that these proposed witnesses would have testified that the failure to personally appear before a notary for the purpose of swearing was a common practice for notarizing applications for absent voters' ballots by precinct election officials in Lake County; and that appellant himself, could have testified that the affidavit was in blank when he signed it, and that this was common practice among precinct election officials in Lake County, and that he was unfamiliar with the statutory penalties which notaries are subject to upon violation.

Appellant further alleges that his trial counsel acted incompetently in withdrawing at trial, over appellant's objection, a request for jury trial.

It should first be noted that appellant's trial counsel in this case was privately retained by him. It is generally recognized throughout the United States, in both State and Federal courts, that the incompetency of private counsel for the defendant in a criminal prosecution is neither a denial of due process under the Fourteenth Amendment, nor an infringement of the right to be represented by counsel under

either the federal or state constitution, unless the attorney's representation is so lacking that the trial has become a farce and a mockery of justice. See Annotation, 74 A. L. R. 1390 and cases collected therein.

We believe that this is a very wisely drawn guideline. For, as was stated in *Casey* v. *Overlade*, 129 F. Supp. 443 (N. D. Ind. 1955), where a defendant in a criminal case is represented by reputable counsel of his own selection, and is convicted after a fair and impartial trial, commission by his counsel of what might appear, in retrospect, to have been errors in trial strategy in the conduct of the defense should not and does not constitute a denial of due process. See also *Schmittler* v. *State* (1950), 228 Ind. 450, 93 N. E. 2d 184.

This Court has long held that adequate representation does not rest upon a mistake in judgment on a certain aspect of the trial, but upon preparation, the handling of the trial, and the necessary steps taken for appeal. *Stice* v. *State* (1950), 228 Ind. 144, 89 N. E. 2d 915; *Brown* v. *State* (1966), 248 Ind. 11, 221 N. E. 2d 676. Therefore we are hesitant to reverse a conviction on the ground of alleged incompetency of counsel, especially when privately employed, unless an extreme case of incompetence is presented. *Brown* v. *State, supra; Rice* v. *State* (1967), 248 Ind. 200, 223 N. E. 2d 579.

In the present case, the failure to appellant's trial counsel to call the several witnesses available to show that it was common practice in Lake County for notaries public to notarize absentee voters' applications without the applicant signing in their presence, and the failure of trial counsel to call appellant to testify that it was common practice among precinct officials to notarize such applications in blank can be considered to be nothing more than decisions on trial strategy. And those decisions may have been very wisely made since it is questionable indeed whether the omitted testimony would have been relevant. For when one

24

defendant is charged with a crime, we fail to see the relevancy of the allegation that such conduct is the general practice in that locale.

With regard to the trial counsel's decision to forego jury trial, absent evidence in the record to the contrary, it must be presumed that the waiver of jury trial was also a strategy move. Appellant has wholly failed to support by affidavit accompanying his motion for new trial, the allegation that his trial counsel's decision to waive jury trial over appellant's objection was based upon appellant's inability or refusal to pay a larger attorney's fee.

For all the foregoing reasons, we hold that the evidence is sufficient in all respects to sustain the finding of guilty made by the lower court and that there is nothing in the record to support the appellant's claim that his constitutional rights have been in any way violated. Therefore, the judgment heretofore entered in this case is affirmed.

Judgment affirmed.

Lewis, C. J., Arterburn and Jackson, JJ., concur.

Mote, J., not participating.

NOTE.—Reported in 238 N. E. 2d 651.