John W. McCANN, Appellant,

v.

STATE of Indiana, Appellee.

No. 682S212.

Supreme Court of Indiana.

April 7, 1983.

1294

Susan K. Carpenter, Public Defender, Joseph Oddo, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Aimee L. Kolze, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from an order denying a petition for post-conviction relief seeking withdrawal of a guilty plea.

Appellant, twenty-nine years of age, was arrested on March 4, 1980 upon three counts of dealing in a controlled substance under Ind.Code § 35–48–4–2(1) alleging sales on two separate occasions to a detective of the Allen County Police Department. Three months later on June 6, 1980, appellant, after being brought to the court house for the start of his trial, was joined by his trial counsel who told him that the State was prepared to file a recommendation on a plea of guilty. The recommendation of the State would be that appellant receive a fifteen year sentence upon a plea of guilty to Count II which alleged a delivery of cocaine to run consecutive to a current parole revocation term being served by him, in return for which the State would dismiss Counts I and II. He agreed and with counsel appeared before the judge for further arraignment and entered a plea of guilty to Count II. The court did not accept the plea but took it under advisement and ordered a pre-sentence investigation. Thereafter on June 25, 1980 appellant appeared with counsel, and the plea agreement was openly discussed and reaffirmed by both sides. The plea was accepted and he was sentenced to fifteen years on Count II, to run consecutively with a sentence resulting from a parole violation and granted jail time credit of thirty-four days.

On August 14, 1980 appellant by the same trial counsel filed a praecipe for transcript of the plea proceedings.

On August 25, 1980 appellant by his same trial counsel filed a petition for return of personalty which was granted.

On April 27, 1981 appellant filed his *pro se* petition seeking to impeach his guilty plea on several grounds. On May 4, 1981 he filed a lengthy memorandum of law *pro se.*

On May 28, 1981 the trial court examined the petition and answer of the State and denied the petition without a hearing.

On June 9, 1981 a new attorney chosen by appellant entered his appearance for appellant. Through a motion for reconsideration new counsel convinced the court to reconsider the denial of the petition and to grant a hearing on it. The hearing was held at a later date resulting in an order denying relief. The State Public Defender has filed appellant's brief.

## I.

■ The claim was made and rejected that the judge accepting the guilty plea had failed to comply with the mandate of Ind. Code § 35–4.1–1–3(b) that the accused be informed that he is admitting the truth of facts in the charge and that judgment and sentence follow the plea. The record shows that he was expressly told that the court must determine whether he was in fact guilty and was asked to explain the factual basis of his guilty plea, which he proceeded to do and described how he sold cocaine to the detective. He was told that sentencing would follow the plea. This requirement was satisfied.

## II.

■ The claim was also made and rejected that the judge failed to inform him that the court was not a party to the plea agreement and was not bound by it as required by Ind.Code § 35–4.1–1–3(e). The exact language in the statute need not be employed, *Laird v. State,* (1979) Ind., 385 N.E.2d 452, yet strict compliance with the terms of the statute is required, *German v. State,* (1981) Ind., 428 N.E.2d 234. Appellant complains that he was not told that the court was not a "party". Appellant was expressly told that the plea bargain was not binding on the judge and that no agreement between him, his attorney and the prosecutor was binding on the court. At this time, he and the judge were engaged in an active discussion of the provisions of the agreement. These statements conveyed the idea that the court had not been a bargainer and that he had made no prior commitments. As such, they satisfied the statute.

## III.

■ The claim was made and rejected that the June, 1980 fifteen year sentence was erroneous wherein it was ordered served consecutively to a sentence imposed on April 7, 1980 for probation violation for a March 1977 conviction. In 1977 at the time of appellant's earlier criminal conduct and conviction, a term of imprisonment was required to commence upon the date the sentence was imposed except under certain circumstances not applicable here. 1976 Public Law 148, § 8, p. 788. When therefore, on April 7, 1980 the court imposed an executed sentence upon that conviction, appellant was being treated in conformity with the statute in effect in 1977 at the time of his prior criminal conduct and conviction.

By the time appellant committed the offense to which he pleaded guilty and for which he received the present fifteen year sentence in this case, Public Law 148, § 8 had been amended and courts were no longer under a mandate to require terms of imprisonment to commence upon imposition, where the sanction was for an offense committed while on probation. At the time of this offense appellant was already on probation. Therefore, when appellant received the new challenged fifteen year sentence, he was being treated in conformity with the statute in effect at the time of his new criminal conduct and conviction. The requirement that the new sentence be served consecutively to the one already being served is the penal consequence of his 1980 criminal conduct by reason of 1980 law (of which he is presumed to have notice) and is not an enhanced or more onerous penal consequence of his prior crime or violation of terms of probation and cannot be deemed violative of the *ex post facto* prohibition of the constitutions. Cf. *Dolan v. State,* (1981) Ind.App., 420 N.E.2d 1364.

Appellant relies upon *Young v. State,* (1980) Ind.App., 413 N.E.2d 1083 in support of this claim. There the court imposed a sentence following revocation of probation, but delayed commencement of that sentence pending completion of a new sentence. There was no statute authorizing that postponement at the time of the crime and conviction that had resulted in probation, and that postponement was therefore error. Such a postponement is not presented here. The court correctly ordered the new fifteen year sentence to be served consecutively to the previously imposed sentence.

### IV.

After the petition for post-conviction was denied in the order to which this appeal is directed, appellant filed a *pro se* motion requesting the court to modify his sentence by granting additional credit to his new fifteen year sentence for time spent in jail pending disposition of these charges. The trial court denied the motion upon consideration of the record "and other factual circumstances." There is nothing in the record to reflect what circumstances may have been considered, no objection to the lack of specificity in the ruling, and no challenge to the ruling in the *pro se* motion to correct errors. This ruling, like all trial court rulings, on appeal is considered presumptively correct, and the burden is upon the complaining party to demonstrate incorrectness. In *N.Y. Central Ry. Co. v. Milhiser,* (1952) 231 Ind. 180, 106 N.E.2d 453, we stated:

"It has been held many times that all reasonable presumptions are indulged on appeal in favor of the rulings and judgments of a trial court, that the record must exhibit the errors for which the reversal is sought, and that a court of appeals will not presume anything in favor of appellant to sustain his alleged error." 231 Ind. at 189, 106 N.E.2d 453.

Under the circumstances the record here fails to exhibit the error in the ruling, and to set aside the order would require us to surmise that there were no factual circumstances buttressing it. A rational review of this order cannot be made.

### V.

Appellant next contends that he was erroneously sentenced for dealing in heroin rather than dealing in cocaine as charged in Count II, to which he pleaded guilty. At formal sentencing, the trial judge in his verbal reference stated:

"COURT: . . . I must now, upon your plea of guilty and a finding of guilty to the crime of dealing in heroin [sic] as charged, sentence you to the custody of the Indiana Department of Corrections for confinement for a period of fifteen years. . . ."

Appellant argues that he stands convicted of an offense not charged and that his conviction cannot withstand due process scrutiny. *McFarland v. State,* (1979) Ind. App., 384 N.E.2d 1104. We cannot agree. All other references by the trial court in his colloquies in open court and in all necessary court papers correctly and accurately refer to appellant's conviction as one for dealing in cocaine. The length of the term of imprisonment conforms to the plea agreement. Appellant stands convicted of dealing in cocaine as charged in Count II, and not dealing in heroin. The judge simply misspoke as he talked extemporaneously, and no adverse consequences flowed to appellant therefrom. There is no basis here upon which to permit the withdrawal of the guilty plea.

### VI.

The primary basis for appellant's petition for post-conviction relief is that his acceptance of the plea agreement and subsequent plea of guilty were not knowingly and intelligently given. This basis is in turn predicated upon the claim that his counsel had been ineffective in advising him to accept the agreement and plead guilty.

The person held in jail upon criminal accusation is separated from family and friends and has no means of investigating the charges against him. There is therefore a right to have the services of a lawyer to

accomplish the ends of public justice. The federal right guarantees the effective services of a lawyer and is fundamental in nature. *Powell v. Alabama,* (1932) 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; *Gideon v. Wainwright,* (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. At the same time the courts are under a duty to provide a form of advice to the accused before accepting a plea of guilty. *Boykin v. Alabama,* (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. The representation of counsel and the advisement by the court are properly to be regarded as two assurances that a tendered plea is voluntary, knowing, and intelligent, and both are therefore relevant in determining in a post-conviction proceeding whether a plea of guilty should be permitted to be withdrawn. The advice of court and counsel overlap, and some but not all of the gaps in counsel's work can be filled by what the court may later say to the accused before accepting a guilty plea.

■ A plea is an intelligent act if it is "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* (1970) 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. The decision to plead guilty and forego a trial involves the making of difficult judgments and is characterized by unavoidable uncertainty. *McMann v. Richardson,* (1970) 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763. Obviously, the client cannot know all that the lawyer does, and cannot appreciate all that the lawyer appreciates. The client's awareness cannot be expanded so as to equate that of the lawyer. Yet the client is entitled to know how the lawyer evaluates the risks attendant to going to trial. Following the hearing upon the petition for post-conviction relief, the trial judge concluded that appellant had failed to carry his burden of establishing that he did not have the required assistance of counsel at the time of his plea and sentencing.

■ At the hearing appellant presented his own testimony, several letters written by his trial counsel after conviction, suggesting that there may be grounds for post-conviction relief on the basis of his repre-

sentation, a transcript of the guilty plea proceeding on June 6, 1980, and a transcript of the formal sentencing proceeding on June 25, 1980. Appellant was thirty-one years old at the time of the hearing and twenty-nine at the time of the plea. On June 6, 1980, the morning of trial, he was in a lockup in the court building when he was met by his lawyer. By this time he had been facing these three drug charges for three months and represented by the lawyer for two months and on at least one occasion prior to this day of trial the subject of plea bargaining had come up. Upon meeting, the lawyer told him that the prosecution had offered a plea bargain and that it would be in his best interest to accept it. A written copy of the agreement was handed to him to read. There was a brief private discussion during which the lawyer told him that he should answer the judge's questions in the affirmative to gain the plea bargain and that the bargain was for a term of fifteen years to run consecutive with his probation time. The lawyer also told him that he had been in conference that morning over the plea bargain. When asked by the post-conviction judge whether he had had a full knowledge and understanding of "all that was involved in the plea agreement" appellant responded "Sort of. In some ways I understood, and in some ways I didn't". At another point in his presentation appellant said: "I understood what he was saying, but like I say, I'm not a lay lawman, I didn't really, and still don't understand what it is really about."

The material which appellant needed to understand included the Notice of Recommendation containing the terms of the plea agreement. It was a simple one page document having its substance in a single paragraph which read:

"On a plea of guilty by Defendant, JOHN WILLIAM MC CANN, to Count II—Dealing in Cocaine, the State of Indiana recommends that Defendant be sentenced to fifteen (15) years in jail, said sentence to run *consecutive* to Defendant's current parole revocation term and

upon acceptance by Court of same, will dismiss Count I and Count II."

The charges faced were simply and easily understood, namely that on two separate occasions appellant had delivered a controlled substance to Neal Prince. Appellant had faced the charges for three months and had been represented by counsel for two of those months. Appellant was a mature man twenty-nine years of age. On June 6 when he appeared before the judge he unequivocally entered his plea and evidenced a clear understanding of the nature of the charges, the potential sentences he would avoid by pleading guilty, the actual sentence he would receive by pleading guilty, and freely admitted delivery of the controlled substances as charged. On June 25, while still in a posture to express a reluctance and lack of understanding, appellant reaffirmed that which he previously declared even though the judge asked him whether he still desired to plead guilty.

There are further suggestions in the record that defense counsel had at least once before the day of trial conferred with appellant on the subject of plea bargaining. He sought discovery. He had taken action to depose Neal Prince, and he had caused a subpoena to issue to a defense witness for trial.

On the basis of that which was presented we are unable to say that the evidence was such that it led unerringly to the conclusion that counsel was ineffective or inadequate in the manner in which he carried out his duties to his client in advising him on whether to accept or reject the plea agreement. There is indeed strong circumstantial evidence that appellant knew and fully appreciated the risks attendant to going to trial rather than pleading guilty, and that he had gained this appreciation through past experience in the criminal justice system and the efforts of this lawyer. His awareness of circumstances relevant to the choices he made in pleading guilty were sufficient. The concern over lack of appreciation which appears in appellant's presentation at the post-conviction hearing appears to fall within the category of difficult

judgments and unavoidable uncertainties which no lawyer has or could have an obligation to dispel. The judgment of the trial court that the plea was not demonstrated to be unknowing on this basis was not contrary to law.

VII.

Appellant seeks a new post-conviction hearing on the grounds that the legal representation by his post-conviction counsel was not effective and adequate in presenting his post-conviction claims. This final contention is predicated upon the failure of the post-conviction counsel to call the former trial counsel as a witness at the post-conviction hearing to establish the claim that former trial counsel had been deficient in advising him on accepting the plea agreement.

As a general proposition the decision whether or not to call a particular witness is left up to the lawyer in mapping his course of action, and absent a clear showing of injury and prejudice the court would not feel confident in declaring counsel ineffective for failure to call a witness. *Johnson v. State,* (1968) 251 Ind. 17, 238 N.E.2d 651; *Robertson v. State,* (1974) 262 Ind. 562, 319 N.E.2d 833. Appellant points out that at one point in the hearing, the letters of trial counsel were rejected by the trial court, and post-conviction counsel was urged to call trial counsel for the purpose of identifying them. Post-conviction counsel told the court that he did not want to do so because "we're putting a man on the spot as a professional and I just don't think that's appropriate." He did then call former counsel but limited his questioning to identifying the letters. Obviously what counsel said here was entirely wrong and intolerable. A lawyer is under a professional and constitutional duty to vigorously prosecute his client's claim of ineffectiveness of counsel, even to the point of embarrassing another lawyer, if necessary. However, what he did here, as distinguished from what his stated motives were, cannot be characterized as ineffective legal representation. This record is, as it reflects events occurring prior to the post-conviction hearing, replete

with suggestions that former trial counsel had a good working relationship with appellant, that the cases were simple and appellant already had a working knowledge of the criminal justice system, that former trial counsel made a full investigation of the facts which included taking the deposition of the undercover officer who allegedly purchased the drugs, having discussions with the chemist who tested the drugs, having discussions with appellant, and examining hospital records. He had made discovery of the State's case and subpoenaed a defense witness for the pending trial. It is more probable than not that appellant was entirely satisfied with the representation he was being provided, for he employed former trial counsel to petition the court to return some personal property after commencing service of his sentence. He continued to correspond with trial counsel during that period.

There are the strongest of indications in this record that former trial counsel as a witness would have done appellant's case more harm than good. As a witness he would have revealed the content of multiple discussions with appellant. Each undoubtedly would have served to increase appellant's awareness of circumstances relevant to his making the difficult judgment of whether to accept or reject the plea agreement. Under such circumstances, post-conviction counsel's action in taking this case to the judge on the basis of appellant's testimony, and the letters of former trial counsel which contain a suggestion that there might be a basis for post-conviction relief, based upon his work, does not demonstrate incompetence or ineffectiveness. Appellant is therefore not entitled to a new post-conviction hearing on this basis.

The judgment of the trial court is affirmed.

GIVAN, C.J., and PRENTICE and PIVARNIK, JJ., concur.

HUNTER, J., dissents with opinion.

HUNTER, Justice, dissenting.

I must respectfully dissent from the majority opinion on Issues VI and VII. These issues deal with the effective assistance of counsel at the guilty plea hearing and at the post-conviction relief hearing respectively. I feel that the issue of effective assistance of counsel at the guilty plea hearing cannot adequately be determined unless the cause is remanded for a new post-conviction relief hearing for the following reasons.

A review of the record reveals that throughout the proceedings which culminated in his plea of guilt and the entry of judgment and sentencing thereon, petitioner had retained and was represented by a private attorney, hereinafter referred to as his "trial attorney." Following his sentencing and incarceration at the Pendleton Reformatory, petitioner engaged in legal research which led him to file, *pro se,* a petition for post-conviction relief. Simultaneously, he communicated his dissatisfaction to his trial attorney and sent a copy of the post-conviction relief petition to the attorney.

The record contains four letters which the trial attorney sent to petitioner subsequent to his sentencing and his decision to file the post-conviction relief motion. With one exception, the letters were handwritten; in only two instances was the message placed on letterhead. In the letters, the trial attorney expressed his willingness to cooperate with petitioner insofar as the petition was concerned, as well as his understanding of petitioner's need to include the allegation of ineffective representation in the petition.

In the series of communications, the trial attorney justifiably expressed his concern over the possibility that petitioner, while alleging his representation was inadequate, might expect or desire the attorney to litigate that claim in conjunction with other allegations raised in the petition. Ultimately, while pledging his cooperation to petitioner, the trial attorney informed petitioner that neither he nor members of his law firm would be able to litigate the post-conviction relief petition due to the conflict

of interest such representation would involve. Petitioner then retained a second attorney, hereinafter referred to as "post-conviction counsel," to represent him throughout the post-conviction relief proceedings.

At the post-conviction relief hearing, post-conviction counsel called petitioner to testify regarding the allegations contained in the petition. Petitioner testified that only five minutes prior to the time when his trial was scheduled to begin, his trial attorney came to lockup and informed him that the state had offered a plea bargain. He testified that his trial attorney advised him that it would be in his best interests to accept the offer. According to petitioner, his attorney then went upstairs to the courtroom. Petitioner testified that he did not see a copy of the plea agreement until thirty minutes later, when he was taken to the courtroom to accept the plea. There, according to petitioner, he acted on the assumption that his attorney knew what was best and answered affirmatively to the questions asked of him, thereby pleading guilty to the crime for which the fifteen-year sentence was ultimately imposed. He testified that due to the lack of consultation with his attorney, together with the effects of medication, he did not understand the plea bargain; he stated that immediately following the entry of the plea, which was taken under advisement by the court, he informed his attorney that he did not agree with it. His attorney did not respond, according to petitioner; he also testified that due to his incarceration, he was unaware whether the attorney had investigated and researched his case and considered alternative approaches to the charges facing him.

In the course of petitioner's testimony, post-conviction counsel sought to introduce the letters which the trial attorney had sent to petitioner. The state objected to the admission of the documents on the basis of hearsay. Post-conviction counsel argued that the letters were admissible under the business records exception to the hearsay rule, and then engaged in the following colloquy with the court:

[MR. WILSON:] "One other thing, Judge. Now, of course, the very best evidence would be the person himself."
COURT: "Precisely."
MR. WILSON: "Mr. Avery."
COURT: "And he could have been subpoenaed although—"
MR. WILSON: "He could have been subpoenaed, Judge."
COURT: "Sure."
MR. WILSON: "But like I say, I think that there is some kinds of times when the second best evidence, and this is the second best because it's his signature, he recognizes it, he received it, I think that under the circumstances the cause, or very nature of these proceedings, that the best evidence would probably be not preferable because we're putting a man on the spot as a professional and I just don't think that's appropriate."

The trial court ultimately sustained the state's objection to the admission of the letters; he ruled that the letters lacked the authentication necessary to qualify them for admission under the business records exception.

In response—and with the court's permission—post-conviction counsel sent word to the trial attorney, whose office was located across the street from the courthouse, to come to the courtroom. When he arrived, he was asked to take the witness stand. There, post-conviction counsel asked him three questions; those questions pertained to his name, his occupation and whether it was his signature which appeared on the letters. The state then cross-examined the trial attorney regarding conversations between the attorney and petitioner which occurred subsequent to the entry of the plea and sentencing. The trial attorney was then excused from the witness stand.

Petitioner maintains he was denied constitutionally adequate representation at the post-conviction hearing by virtue of his post-conviction counsel's decision not to question his trial attorney because it would put him "on the spot as a professional." We have found that under certain circumstances an ignorance of the applicable law

or a misperception of the state of the law can result in inadequate assistance of counsel. *Smith v. State,* (1979) Ind., 396 N.E.2d 898.

Here, notwithstanding the trial attorney's presence at the hearing, post-conviction counsel did not question him about the substantive allegations of inadequate counsel at issue. Instead, post-conviction counsel asked the trial attorney only to authenticate the letters he had written to petitioner. This failure to question the trial attorney would not *ipso facto* establish that the post-conviction representation was inadequate. That omission might, in any particular instance, be the product of strategy or trial tactics.

Post-conviction counsel, however, expressly stated that he did not consider it appropriate to question the trial attorney because it would put the "man on the spot as a professional." That approach defies the concepts of "independent professional judgment" and "zealous representation" embodied in Canons 5 and 7 of our Code of Professional Responsibility. Likewise, it flies in the face of a well-settled rule of post-conviction relief proceedings; in cases where no effort is made to produce the testimony of trial counsel, either orally or by affidavit, it is a rule of law that the court may presume that the attorney would not have corroborated the petitioner's testimony regarding the allegations of incompetency. *Cobbs v. State,* (1982) Ind., 434 N.E.2d 883; *Lenoir v. State,* (1977) 267 Ind. 212, 368 N.E.2d 1356; *Vernor v. State,* (1975) 166 Ind.App. 363, 336 N.E.2d 415.

Post-conviction counsel's apparent lack of cognizance of this rule and his misplaced deference to the professional status of the trial attorney placed petitioner in a paradoxical position. Although the trial attorney was called as a witness, his only testimony regarding the substantive allegations of inadequate representation occurred during cross-examination by the state. Inasmuch as that evidence only tangentially concerned the merits of the factual allegations, the presumption that the trial attorney would have contravened petitioner's testimony remained in force.

The majority suggests that the failure to question the trial attorney was one of strategy because of statements made by the attorney at the guilty plea hearing. The transcript of that hearing was admitted at the post-conviction hearing. There, the trial attorney had stated that he based his conclusion that petitioner should plead guilty on an investigation which included a deposition of a police officer, discussions with a chemist and petitioner, and an examination of hospital records. These statements, however, were neither made under oath nor were subject to cross-examination; the summary statement of the trial attorney only concerns one basis of petitioner's claim that the representation afforded him was inadequate. The lack of evidence solicited on petitioner's behalf was not the product of strategy or trial tactics; rather, it was the result of post-conviction counsel's expressly-stated misunderstanding of his responsibilities to petitioner. In the circumstances present here, I find that petitioner was denied the effective assistance of counsel at the post-conviction relief hearing. *Smith v. State, supra.*

For all of these reasons, I believe the judgment of the trial court denying post-conviction relief should be reversed and the cause should be remanded for a new hearing where a proper determination of the issue of effective assistance of counsel at the guilty plea hearing can be made.