**Thomas R. HARSHMAN, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 382S112.

Supreme Court of Indiana.

July 15, 1983.

Susan K. Carpenter, Public Defender of Ind., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Aimee L. Kolze, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant-petitioner, Thomas R. Harshman, was convicted of murder upon his plea of guilty pursuant to a plea agreement and received a sentence of thirty years imprisonment. One year later he filed a petition for post-conviction relief seeking permission to withdraw his plea. The petition was denied. This is the appeal from that judgment.

The three contentions on appeal are that the post-conviction court was in error in concluding that:

1. defendant received the effective assistance of counsel leading up to his plea of guilty; that

2. defendant knowingly, voluntarily and intelligently made his plea of guilty; and that

3. the initial trial court had committed no error in not holding a hearing on the issue of his competence to stand trial.

## I.

The right to counsel guaranteed by the Sixth Amendment to the United States Constitution requires much in the nature of care, skill, and even personal sacrifice from lawyers.

"Undivided allegiance and faithful, devoted service to a client are prized traditions of the American lawyer. It is this kind of service for which the Sixth Amendment makes provision. And nowhere is this service deemed more honorable than in case of appointment to represent an accused too poor to hire a lawyer, even though the accused may be a member of an unpopular or hated group, or may be charged with an offense which is peculiarly abhorrent."

*Von Moltke v. Gillies,* (1948) 332 U.S. 708, 725–26, 68 S.Ct. 316, 324, 92 L.Ed.2d 309. Article I, § 13, of the Indiana Constitution requires no less. When the assistance provided by counsel is subjected to challenge in court, it is presumed to have satisfied the requirements of this professional trust. Such presumption is rationally grounded in the educational and other requirements for admission to the practice of law, *Magley v. State,* (1975) 263 Ind. 618, 335 N.E.2d 811, but is rebuttable by strong and convincing proof. *Robbins v. State,* (1971) 257 Ind. 273, 274 N.E.2d 255. In resolving the issue, the court should consider the totality of the circumstances, which, in a case of this type, where the defendant is challenging the work of counsel leading up to the making of a plea of guilty, include the advisement of the judge to the defendant prior to any acceptance of a tendered plea. *McCann v. State,* (1983) Ind., 446 N.E.2d 1293.

"A plea is an intelligent act if it is 'done with sufficient awareness of the relevant circumstances and likely consequences.' *Brady v. United States,* (1970) 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. The decision to plead guilty and forego a trial involves the making of difficult judgments and is characterized by unavoidable uncertainty. *McMann v. Richardson,* (1970) 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763. Obviously the client cannot know all that the lawyer does, and cannot appreciate all that the lawyer appreciates. The client's awareness cannot be expanded so as to equate that of the lawyer. Yet the client is entitled to know how the lawyer evaluates the risks attendant to going to trial."

*McCann v. State, supra.*

"An intelligent plea is the culmination of a rational decision-making process, in which the accused assesses the numerous factors which bear upon his choice of whether to formally admit his guilt or to put the State to its proof. The plea must

represent the informed, self-determined choice of the defendant among practicable alternatives."

*United States ex rel. Healey v. Cannon,* 553 F.2d 1052, 1056 (7th Cir.1977).

In order to demonstrate lack of adequate legal representation before making his plea of guilty, appellant has focused upon the manner in which defense counsel (1) investigated and pursued possible defenses of insanity and intoxication, (2) investigated and pursued possible suppression of his confession and fruits of a search, (3) investigated and pursued a hearing upon his competence to stand trial, and (4) advised him on the morning of the plea that it would do no good to withdraw from the agreement.

The findings of the post-conviction judge are detailed and exhaustive. Appellant was represented by Mr. Patterson and later also by Mr. Weldy, who were experienced in criminal defense work. Together they worked a total of approximately one hundred and seventy hours for appellant. Regarding defendant's first point, the findings disclose that defense counsel investigated appellant's wife and others who would have knowledge of his alcoholic consumption. The express finding continues:

"Defendant's attorneys discussed an alcohol related defense or defense of diminished capacity with him and they concluded that such was not a defense in this case; Defense counsel met with and advised the Defendant on a great number of occasions and had lengthy and substantial consultations and discussions with him at County Jail and at the Courtroom.

\*　　\*　　\*　　\*　　\*　　\*

Defense Counsel did pursue the psychiatric issue as well as the alcohol defense issue and Defendant's prior history of some treatment when he was age 16 to 18 (some 17 years before the date of the murder) was developed and considered by Counsel and felt not to be an advantage to Defendant at trial and after consultation with the Defendant and with his approval that issue was dropped as a part of trial strategy. . . ."

Such findings decisively refute defendant's first point. Regarding the second point, the court concluded:

"Defendant's confession was knowingly, intelligently and voluntarily given after a full advice of his rights and a proper waiver of his rights . . . after being advised of his 4th Amendment right concerning search and seizure knowingly and voluntarily gave the police officers a consent to search his place of residence. . . . "

Absent a challenge to the evidentiary support for this conclusion it decisively refutes defendant's second point. The findings quoted above in relation to the first point, adequately refute the third point, i.e., that counsel negligently failed to press for a competency hearing.

Finally, assuming that defense counsel advised defendant on the morning of the plea that it would do no good to withdraw from the plea agreement, such fact would not indicate a lack of effective counsel. Defendant received a thirty year sentence for murder where sixty years was possible after having confessed and having provided other evidence that he choked the unarmed female victim for two or three minutes, with his thumb on her throat, and that after she stopped struggling, he ran over her body with his car. Advice to stick to the agreement was within the realm of effective counsel. The trial court was clearly correct in adjudging that defense counsel was not shown to have provided constitutionally deficient legal assistance.

## II.

Defendant next contends that the court erred in finding his plea of guilty to have been knowing, voluntary and intelligent. He concedes that the judge receiving his plea complied with Ind.Code § 35–4.1–1–3 (since repealed, now § 35–35–1–2). But nevertheless he claims that he carried his burden on this issue by his testimony at the post-conviction hearing in which he stated:

"A. I didn't realize that I could come over here and tell them that I didn't

want to go through with it. I didn't know any different."

Defendant relies upon *Chandler v. State,* (1973) 261 Ind. 161, 300 N.E.2d 877, where this Court reversed a judgment denying post-conviction relief in the form of authority to withdraw a plea of guilty. It is readily apparent that *Chandler* involves unusual circumstances not present here. The dominant motivation for permitting relief was the disbarment of defense counsel and the consistency of the grounds for disbarment with the defendant's version of his experience with that lawyer. Here there is no such supportive matter for defendant's claim.

Regarding witness credibility, the post-conviction judge in this case made the following express finding:

"The Defendant is not a credible witness and his testimony on the essential facts is not credible and is not worthy of belief; in addition to the testimony of the Defendant not being believable the Defendant's testimony is on several material questions of fact impeached and contradicted by the testimony of Trent M. Patterson, S. Daniel Weldy, III and Detective Dennis Guillaume...."

The plea agreement is an exhibit in the record of the guilty plea proceeding. It was signed by defendant on June 5, 1980. The post-conviction court made the following express finding:

"[O]n the weekend before the plea was to be made, Defendant did call his Attorney and indicate he had second thoughts about the plea and Mr. Patterson and Mr. Weldy who indicated that he did not think he could face the time in jail and they talked about that and went through everything again and Defendant again said he would plead guilty."

The post-conviction court also made the following express finding regarding events at the proceeding conducted on the motion to withdraw his not guilty plea:

"[T]he Court clearly identified the hearing as a hearing on Defendant's motion to withdraw his not guilty plea and plead guilty .... [T]he court addressed the Defendant and identified the purpose of the hearing as to whether or not the court could accept or refuse the plea of guilty proposed by Defendant's written motion ... and clearly identified Defendant's motion to enter his plea of guilty and ask Defendant if he intended to plead guilty to the charge of murder to which the Defendant responded yes.... Defendant was asked the question do you wish to plead guilty to the charge of murder as filed and he answered yes.... Defendant was asked several questions concerning the factual basis as it related to his plea of guilty and he correctly answered those questions.... Defendant was asked the question do you now say that on the 11 day of May, 1979 you did commit the offense of murder as charged in this information and he answered yes...."

█ From the point of view of an appellate tribunal, the most that can be said of defendant's testimony that he did not know at the plea proceeding that he was in a position to freely choose whether to plead guilty or not, is that it creates a conflict in the evidence for resolution by the trial judge. The express findings by the post-conviction judge describing the colloquy between defendant and the judge are overwhelming in showing that the defendant knew he was engaged in the very process of making the plea. It shows that he was aware that the purpose of the process was to ferret out any doubts or questions he might have about his proposed plea of guilty. He ignored repeated opportunities to express any reservations. The findings also reveal that defendant discussed the propriety of the plea agreement upon several occasions, one on a week-end, with defense counsel, when his reservations were thrashed through. These conferences indicate an awareness of the conditional nature of the plea agreement. While the conflict in the evidence warrants a rejection of defendant's claim on this point, we find the conclusion unavoidable that defendant knew at the plea proceeding that any expression on his part of doubt would place

the plea agreement and its resultant benefits to him in jeopardy and that he freely chose his answers to avoid that rejection. The contention that the plea was not knowing, voluntary and intelligent is not sustained.

### III.

Defendant next contends the post-conviction judge was in error in concluding that the initial trial judge had committed no error in not holding a hearing on the issue of his competence to stand trial. A hearing is required when the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense. Ind.Code § 35–5–3.1–1. At one point during the pre-trial period defense counsel filed a motion for appointment of a psychiatrist to examine defendant. The motion was never ruled upon. The information supplied to the court was that defendant had been committed to the Richmond State Hospital seventeen years earlier, but had received no treatment for mental illness since that time. The accused must be mentally competent before he can be put to trial on criminal charges. *Pate v. Robinson,* (1966) 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815; *Dragon v. State,* (1979) 270 Ind. 223, 383 N.E.2d 1046. In *Evans v. State,* (1973) 261 Ind. 148, 300 N.E.2d 882, reasonable grounds for a hearing were found in the statements of a physician made shortly after the trial that the defendant was then "overtly psychotic" and suffering from both "hallucinations" and "distortions of reality". In *Pate v. Robinson, supra,* defense counsel maintained throughout the trial that his client was not competent, and several witnesses so testified. Here, the seventeen year old commitment and the motion for appointment of psychiatrist stand as the basis of the claim. We find that without more they do not provide a reasonable ground for believing that defendant lacked the required ability for facing criminal charges.

The judgment denying post-conviction relief is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.